DIXON, Appellee and Cross-Appellant,

v.

SMITH, Appellant and Cross-Appellee.

[Cite as *Dixon v. Smith* (1997), 119 Ohio App.3d 308.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8-96-19.

Decided April 23, 1997.

310

312

*Goslee & Goslee* and *William T. Goslee,* for appellee and cross–appellant.

*Mark A. Losey,* for appellant and cross–appellee.

THOMAS F. BRYANT, Judge.

This appeal and cross-appeal arose from the decisions of the Logan County Common Pleas Court dismissing the claim of plaintiff, Karen Dixon, for a constructive trust and granting judgment in her favor on her claim of unjust enrichment against Harold Smith.

Karen Dixon and Harold Smith met through a dating service in November 1988. In January 1989, Harold purchased an engagement ring and proposed marriage to Karen. She accepted this proposal and the parties set a wedding date of June 30, 1989. Although they canceled this June wedding date, Karen and Harold agreed to postpone the wedding and marry during Christmas 1989. In October 1989, Karen moved into Harold's home and approximately one month later, the parties began to commingle their assets in a joint checking account. Although the parties did not marry in December, both Karen and Harold remained engaged throughout their four-year cohabitation.

The parties discussed developing a horse-breeding/boarding business on Harold's property. To this end, Karen took out a first mortgage in the amount of $18,750 on rental property she owned free and clear of any encumbrances. This money was deposited directly into the parties' joint checking account, and

ultimately the entire amount was spent within one year on improvements to Harold's home.

When Karen moved into the residence, the house had one bedroom and two bathrooms and was valued at $119,000. Eight months later, two bedrooms and one bathroom were added to the house and the property value increased to $132,000. In July 1992, a third appraisal was performed, and the home's value rose to $176,200 due to the improvements of the home and installation of several horse barns on the property.

In May 1993, Karen learned that Harold was having an affair. Although she made an attempt to repair the relationship, Harold's affair continued, and she moved out in November 1993. At the time, the joint checking account contained approximately $2,000 and the parties agreed to divide this money equally. In addition, Karen retained possession of her car, her horse, several pieces of furniture, and $4,000 from the proceeds of the sale of Harold's truck. However, when Karen moved out, the mortgage loan against her rental property that was used for the improvements to Harold's home remained unpaid.

On September 29, 1995, Karen filed a complaint against Harold asking that the $18,750 obtained from the mortgage of her rental property be returned to her because the funds were invested in the home improvements in contemplation of marriage. She further requested compensation for her labor and effort in improving defendant's residence. In addition, on July 29, 1996, Karen filed an amended complaint asking the court to impose a constructive trust to recover all money allegedly spent on the defendant.

In his answer, Harold denied liability for unjust enrichment and constructive trust, asserted that the action was barred by the doctrine of unclean hands, and stated that the proceeds obtained from Karen's mortgage constituted a gift. In addition, Harold filed a motion for summary judgment alleging that the suit was an unactionable palimony suit based upon this court's ruling in *Sterling v. Thompson* (Jan. 23, 1981), Auglaize App. No 2–80–26, unreported, 1981 WL 6773. The court denied Harold's motion by judgment entry dated June 14, 1996.

The case was tried before the court on September 10 and 11, 1996. During trial, Karen presented evidence to establish the increase in value of Smith's home due to the improvements made to the residence. She demonstrated that between December 1989 and August 1990, the entire $18,750 obtained from the mortgage of her rental property was spent exclusively on the improvements to Harold's residence. By submitting check registers, canceled checks, and stipulated summaries, she documented each expenditure made to complete these improvements.

Karen not only sought reimbursement for the money used to improve Harold's home, she also urged the court to return all money she spent for Harold's benefit

during their four-year cohabitation. She testified that of the $100,506 she deposited in the joint account, $54,527 was used to service Harold's debts. She argued that in order to restore her to the position she would have been in had they not commingled their assets, this money should be returned to her via the imposition of a constructive trust.

Karen testified that she allowed her money to be used for the improvements of the home, for Harold's debts, and for the development of a horse-boarding business because she relied on Harold's promise to marry. She anticipated that the residence would be their marital home and that she would work during the marriage to further the business. Karen also testified that she would not have moved in with Harold or commingled her assets with his absent the promise of marriage.

While Karen believed that the parties would eventually be married, Harold testified that even before Karen moved into the home, he had decided that he did not want to marry her. Although he came to this decision before the parties commingled their assets and before Karen spent her entire loan on the improvements to his home, Harold did not disclose his change of heart. In fact, it was not until the day Harold testified at trial that Karen learned that after the fall of 1989, he never intended to marry her.

Harold argued that no reimbursement was justified because Karen actually benefited from their four-year cohabitation. He described their lifestyle, their spending habits, and their enjoyment of the horse-boarding business they built together. In fact, Harold testified that although his property increased in value during the period Karen lived at his residence, his personal debt also increased because of the couple's tendency to spend beyond their means.

Harold moved the court to dismiss Karen's suit for unjust enrichment and to recover under a constructive trust using several theories. Harold first argued that Karen's monetary contributions to the joint account were gifts and, under equitable principles, should not be returned because "equity does not aid a volunteer." Second, he urged the court to dismiss the suit as being an impermissible palimony action or an action barred by Ohio's "heart balm" statute. Finally, Harold argued that the facts did not support the imposition of a constructive trust by clear and convincing evidence or as a matter of law. The court granted Harold's motion to dismiss the constructive trust action but denied his motion to dismiss the unjust enrichment claims.

In a decision and judgment entry filed on September 16, 1996, the Logan County Common Pleas Court ruled in favor of Karen and restored to her $18,750 by which it found Harold to be unjustly enriched. On September 20, Karen filed a motion for prejudgment interest, seeking interest from the day the funds were

deposited to the joint account. The court denied plaintiff's motion. It is from these judgments that both Harold and Karen appeal.

Harold raises the following six assignments of error for our review:

"I. Ohio's Heart Balm Act bars amatory actions such as plaintiff's action in the case *sub judice*.

"II. Ohio law does not provide for recovery under a 'palimony' suit.

"III. The principle that 'equity will not aid a volunteer' should have barred plaintiff's claims against Harold Smith.

"IV. The evidence was insufficient to demonstrate that the plaintiff suffered detriment from which Harold Smith retained any benefit unjustly under the circumstances.

"V. New evidence that was not reasonably discoverable surfaced that demonstrated that plaintiff should have been equitably estopped from asserting an action of unjust enrichment.

"VI. The trial court abused its discretion by failing to equitably estop appellee from claiming unjust enrichment."

Karen asserts the following assignments of error in her cross-appeal:

"I. The trial court erred when it failed to impose a constructive trust when the evidence showed the Defendant engaged in active fraud.

"II. The trial court erred in failing to award prejudgment interest in the judgment rendered in this cause."

■ Harold's first two assignments of error claim that Karen's claims are barred by Ohio law. First, Harold argues that since Karen's claims are based upon a broken promise of marriage, they are barred by R.C. 2305.29, Ohio's "heart balm" statute. The statute bars amatory actions and provides, "No person shall be liable in civil damages for any breach of a promise to marry, alienation of affections, or criminal conversation."

In *Wilson v. Dabo* (1983), 10 Ohio App.3d 169, 10 OBR 223, 461 N.E.2d 8, the Franklin County Court of Appeals held that while R.C. 2305.29 prohibits the recovery of civil damages based on a broken promise of marriage, the statute does not preclude the recovery of property which was transferred in reliance on a promise to marry. The court explained:

"[T]he effect of R.C. 2305.29 is that a promise to marry partakes of a contract which is revocable by either party at will. When one party exercises this right to terminate the agreement, he or she should restore the other party to his or her original position with respect to property transferred in contemplation of fulfillment of the promise to marry. Requiring fulfillment of such equitable duty to

restore the other party to the preagreement position does not constitute an award of damages for breach of promise to marry but is an order for restitution of property to which the reneging party no longer has a right, having relinquished it by exercising the statutory prerogative to terminate the promise to marry." 10 Ohio App.3d at 170–171, 10 OBR at 224, 461 N.E.2d at 10.

Therefore, the recovery of property transferred in reliance on a promise to marry is permitted upon the equitable theory of preventing unjust enrichment. The court further stated:

"The property transferred, even if a gift, was a conditional gift given with the mutual understanding that the parties would be married. When the condition is not fulfilled because one, or both, of the parties change their minds, it is only fair that property given in contemplation of fulfillment of such understanding be returned at least if the party seeking recovery has not unjustifiably broken off the engagement." *Id.* at 170, 10 OBR at 224, 461 N.E.2d at 9.

It is clear that, contrary to Harold's assertion, Ohio's heart balm statute, R.C. 2305.29, does not bar the recovery of property transferred in reliance upon a promise of marriage. We therefore find Harold's first assignment of error to be without merit.

■ In his second assignment of error, Harold argues that Karen's claims are based on a theory of palimony and, as such, are not recognized by Ohio statute or common law. In support of his position, Howard cites *Lauper v. Harold* (1985), 23 Ohio App.3d 168, 23 OBR 411, 492 N.E.2d 472, in which the court held that Ohio law does not permit a division of assets or property based on mere cohabitation. While the court held that a trial court lacks the authority to make a property division between a cohabiting couple, the plaintiff's claims for recovery were not based upon the parties' living arrangement, but upon the unjust enrichment that resulted from defendant's retention of plaintiff's money, given in reliance upon a promise of marriage. Although the *Lauper* court was unwilling to find restitution based on the cohabitation relationship, it did consider recovery under the theory of unjust enrichment. The court explained:

"[E]ven as we are unwilling to recognize a separate status for unmarried persons who are living together, we acknowledge that in any type of relationship * * * there exists the possibility that one party may become unjustly enriched at the expense of another." *Id.* at 170, 23 OBR at 413, 492 N.E.2d at 474.

It is clear from the record that plaintiff has not asserted a palimony claim. She did not seek a division of assets based on her four-year cohabitation with defendant. Instead, she asked the court to grant her restitution of the conditional gift made in reliance upon a promise to marry. Such a claim is permitted

under Ohio law and is not affected by the state's refusal to acknowledge palimony actions. Appellant's second assignment of error is without merit.

■ In his third assignment of error, Harold argues that Karen's voluntary funding of his home improvements was a gift. He further claims that the trial court abused its discretion when it "granted relief to a volunteer." In support of this position, Harold argues that Karen was never pressured into taking out the loan or restricted in her allocation of the funds.

In rejecting this argument, the trial court held:

"The argument that the Plaintiff was a volunteer ignores the fact that the Defendant promised to marry her and Plaintiff testified adamantly that, but for the promise to marry, she would not have moved in with the Defendant and transferred her life savings to him."

Harold's own testimony established that he concealed the fact that he never intended to marry Karen. She therefore was not fully aware of Harold's intentions when she transferred the $18,750 into their joint account. Absent such knowledge, it is clear that Karen could not have volunteered these funds. We therefore find Harold's third assignment of error to be entirely without merit.

■ In his fourth assignment of error, Harold challenges the sufficiency of the evidence to support a claim of unjust enrichment. The general rule of unjust enrichment is stated in the Restatement of the Law, Restitution (1937) 12, Section 1: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Unjust enrichment occurs when a party retains money or benefits which in justice and equity belong to someone else. *Liberty Mut. Ins. Co. v. Indus. Comm.* (1988), 40 Ohio St.3d 109, 110–111, 532 N.E.2d 124, 125–126.

In *Hummel v. Hummel* (1938), 133 Ohio St. 520, 11 O.O. 221, 14 N.E.2d 923, the Supreme Court observed as follows:

"In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relation springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts." *Id.* at 525, 11 O.O. at 223, 14 N.E.2d at 925–926.

In *L & H Leasing Co. v. Dutton* (1992), 82 Ohio App.3d 528, 612 N.E.2d 787, this court identified three elements necessary to succeed in an action based on a quasi-contract: (1) a benefit conferred by a plaintiff upon a defendant,

318

(2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Id.* at 534, 612 N.E.2d at 791, citing *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 250, 465 N.E.2d 1298, 1302. Defendant argues that there was insufficient evidence to establish the third element. We disagree.

When Karen left the residence, Harold retained many benefits from her $18,750 contribution. Not only did the value of his home substantially increase, but Harold also benefited by continuing to live in an improved home with two additional bedrooms and one additional bathroom. It is clear that it would be unjust to permit defendant to retain these benefits without restitution to the plaintiff for the funds that made those improvements possible.

The doctrine of unjust enrichment has also been applied where one party has been enriched at the expense of another due to a mistake either of law or fact. The leading Ohio case is *Firestone Tire & Rubber Co. v. Cent. Natl. Bank of Cleveland* (1953), 159 Ohio St. 423, 50 O.O. 364, 112 N.E.2d 636. In paragraph two of the syllabus, the court held:

"The general rule is that money paid under the mistaken supposition of the existence of a specific fact which would entitle the payee to the money, which money would not have been paid had it been known to the payer that the fact did not exist, may be recovered."

In the present case, Karen deposited $18,750 into a joint savings account under the mistaken belief that she and Harold were to be married and that her money would go to the improvements of their marital home. The court was presented with ample evidence that, if believed, established that Karen would not have contributed these funds had she known of Harold's intentions.

The appropriate standard for testing the sufficiency of evidence in a civil trial was set forth in the syllabus of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

After a careful review of the record, we find that the court was presented with competent and credible evidence to establish the essential elements of unjust enrichment. Accordingly, we overrule Harold's fourth assignment of error.

Harold's fifth and sixth assignments of error focus on the $4,000 Harold gave to Karen prior to trial. Karen testified that after she left the residence, Harold agreed to sell his truck and give her $10,000 "to help [her] get estab-

lished." However, Harold was only able to obtain $4,000 from the vehicle's sale. Although he transferred this money to Karen, Harold made no further attempts to obtain the remaining $6,000. During trial, Harold testified that he did agree to pay the $10,000 but felt that in consideration of the $4,000 and the property she retained, Karen had been adequately compensated. Harold further testified that he felt he was not legally obligated to compensate Karen; however, he did pay the $4,000 "to keep her from harassing [him]."

In his final two assignments of error, Harold argues that this pretrial exchange of $4,000 was new evidence and, as such, warranted a new trial. In addition, he claims that Karen should have been equitably estopped from asserting a claim of unjust enrichment. Specifically he argues that Karen should not have been permitted to recover in equity more than the alleged pretrial agreement would have allowed for.

■ Harold's fifth and sixth assignments of error are clearly without merit because the evidence of the $10,000 agreement was not new to the court. The trial transcript reveals several instances in which both Karen and Harold discussed the oral agreement. Further, in its decision, the court specifically included the $4,000 in the list of assets that Karen retained when she left Harold's home. It is clear, therefore, that the trial court properly considered this evidence and its setoff effect when it reached its decision to grant restitution to Karen in the amount of $18,750. Absent an abuse of discretion, we find no reason to disturb this decision. Accordingly, we overrule Harold's fifth and sixth assignments of error.

■ In her cross-appeal, Karen raises two assignments of error for our review. First, she contends that the trial court should have imposed a constructive trust against Harold's property for the $54,527.18 she spent on his behalf. Second, she argues that the court erred when it failed to grant her request that interest be added to her judgment from the date the $18,750 loan was deposited into the joint checking account.

■ A constructive trust arises by operation of law against one who through any form of unconscionable conduct holds legal title to property where equity and good conscience demands that he should not hold such title. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 738, 600 N.E.2d 791, 795–796. Where it is inequitable that a person retain title to property, a constructive trust may be imposed even in the absence of fraud where there exists a legal principle which can serve as a basis for equitable relief. *Id.* at 738–739, 600 N.E.2d at 795–796.

■ Where, as in the present case, unjust enrichment is found, it may serve as the basis for the operation of a constructive trust. *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 226, 9 OBR 565, 567–568, 459 N.E.2d 1293, 1295–1296.

However, once unjust enrichment is established, the burden is on the claimant to trace the funds to an identifiable product. *State ex rel. Marietta v. Groves* (Aug. 9, 1985), Washington App. No 84 X 7, unreported, 1985 WL 8297. A constructive trust is not a right to recover on a debt owing; it creates a right to recover property wrongfully held. *Staley v. Kreinbihl* (1949), 152 Ohio St. 315, 40 O.O. 361, 89 N.E.2d 593. Therefore, a trust will follow property through all changes in its state and form so long as the property, its product, or its proceeds are capable of identification. 91 Ohio Jurisprudence 3d (1989), Trusts, Section 270. Because identification is crucial to permit recovery of the wrongfully held property, tracing is fundamental to a constructive trust.

In the present case, Karen presented the court with a substantial amount of documentation to trace the money used for the improvements on defendant's home. The court was able to review these documents, conduct an equitable accounting, and conclude that Karen's entire $18,750 was spent on improving Harold's residence. Although the court failed to grant Karen's request for a constructive trust, by tracing the funds from Karen's loan deposit to Harold's home improvements and granting restitution, the court achieved an equitable result.

Karen argues that the court should have further granted her restitution of the $54,527.18 she allegedly spent on Harold's behalf during their four-year cohabitation. It is clear from a review of the record that this entire amount is not specifically traceable and that the court apparently considered Karen's claims for restitution as well as Harold's claims for setoff when it reached its decision. Because we conclude that the court performed what is tantamount to an equitable accounting, it, in effect, engaged in a constructive trust analysis. We therefore find no prejudice to Karen.

 In her final assignment of error on cross appeal, Karen argues that the trial court erred when it failed to award prejudgment interest on the judgment rendered. A determination as to an award of prejudgment interest is within the discretion of the trial court. *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 337, 13 OBR 414, 415–416, 469 N.E.2d 1055, 1057. Therefore, this court will not disturb the decision of the trial court unless we find that it was arbitrary, unreasonable, or unconscionable.

In *Tony Zumbo & Son Constr. Co. v. Dept. of Transp.* (1984), 22 Ohio App.3d 141, 147–148, 22 OBR 381, 388, 490 N.E.2d 621, 627–628, the court held:

"[W]here the amount owing under a contract is clear, interest runs on the debt from the time it was due and payable, even though liability for the debt is disputed. * * * On the other hand, where the amount of the claim is unclear and

uncertain, it is unliquidated and interest does not commence until the claim becomes liquidated as to amount."

The term "liquidated claim" means one that can be determined with exactness from the agreement between the parties or by the application of definite rules of law. *Yin v. Amino Products Co.* (1943), 141 Ohio St. 21, 29, 25 O.O. 136, 139–140, 46 N.E.2d 610, 613–614; *A.G. Hauck Co. v. Benza* (Sept. 17, 1986), Hamilton App. No. C–850874, unreported, 1986 WL 10247. However, the amount of recovery in an unjust enrichment claim is by its very nature uncertain until the court determines the amount to which the defendant has benefited and whether it would be unjust not to award restitution to the plaintiff. *Advanced Marketing Serv., Inc. v. Dayton Data Processing, Inc.*, (Mar. 6, 1992), Montgomery App. No. 12607, unreported, 1992 WL 41822.

In the present case, the amount due and owing on Karen's unjust enrichment claims was not identifiable prior to trial. There was much dispute over the expenditures Karen made for Harold's home and business, the amount by which Harold was unjustly enriched by Karen's contributions, and the effect of any setoff to Karen's restitution. Therefore the court did not err when it came to the following conclusion:

"Although prejudgment interest can be awarded on a contract where the damage is unliquidated, the damage 'should be capable of ascertainment by mere computation, or is subject to reasonably certain calculations.' *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364 [620 N.E.2d 996]. The damages in this case do not meet this standard and, therefore, § 1343.03[B] controls and the interest runs from the date of the judgment entry awarding damages."

We therefore hold that the trial court did not abuse its discretion when it denied Karen's motion for prejudgment interest. Accordingly, we overrule her second assignments of error.

Having found that Harold's and Karen's assignments of error are without merit, we affirm the decision of the Logan County Court of Common Pleas.

*Judgment affirmed.*

EVANS, P.J., and HADLEY, J., concur.