742 A.2d 643

**Rodger LINDH, Appellee,**

v.

**Janis SURMAN, Appellant.**

Supreme Court of Pennsylvania.

Argued March 8, 1999.

Decided Nov. 23, 1999.

Reargument Denied Dec. 21, 1999.

Frank E. Reilly, Pittsburgh, for Janis Surman.

Joanne Ross Wilder, Pittsburgh, for Rodger Lindh.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NEWMAN, Justice.

In this appeal, we are asked to decide whether a donee of an engagement ring must return the ring or its equivalent value when the donor breaks the engagement.

The facts of this case depict a tumultuous engagement between Rodger Lindh (Rodger), a divorced, middle-aged man, and Janis Surman (Janis), the object of Rodger's inconstant affections. In August of 1993, Rodger proposed marriage to Janis. To that purpose, he presented her with a diamond engagement ring that he purchased for $17,400. Rodger testified that the price was less than the ring's market value because he was a "good customer" of the jeweler's, having previously purchased a $4,000 ring for his ex-wife and other expensive jewelry for his children. Janis, who had never been married, accepted his marriage proposal and the ring. Discord developed in the relationship between Rodger and Janis, and in October of 1993 Rodger broke the engagement and asked for the return of the ring. At that time, Janis obliged and gave Rodger the ring. Rodger and Janis attempted to reconcile. They succeeded, and Rodger again proposed marriage, and offered the ring, to Janis. For a second time, Janis accepted. In March of 1994, however, Rodger called off the engagement. He asked for the return of the ring, which Janis refused, and this litigation ensued.

Rodger filed a two-count complaint against Janis, seeking recovery of the ring or a judgment for its equivalent value. The case proceeded to arbitration, where a panel of arbitrators awarded judgment for Janis. Rodger appealed to the Court of Common Pleas of Allegheny County, where a brief non-jury trial resulted in a judgment in favor of Rodger in the amount of $21,200.[1] Janis appealed to the Superior Court, which affirmed the trial court in a 2–1 panel decision. Judge Ford Elliott, writing for the majority, held that no-fault principles should control, and that the ring must be returned regardless of who broke the engagement, and irrespective of the reasons. In a Dissenting Opinion, Judge Schiller criticized the Majority Opinion for creating what he termed a "romantic bailment" because of its refusal to examine the actions of the donor in breaking the engagement, thereby creating a *per se* rule requiring the return of an engagement ring in all circum-

---

1. The basis for the $21,200 award of the trial court was Rodger's testimony that this was the fair market value of the ring.

stances. We granted allocatur to answer this novel question of Pennsylvania law.

We begin our analysis with the only principle on which all parties agree: that Pennsylvania law treats the giving of an engagement ring as a conditional gift. *See Pavlicic v. Vogtsberger*, 390 Pa. 502, 136 A.2d 127 (1957). In *Pavlicic*, the plaintiff supplied his ostensible fiancée with numerous gifts, including money for the purchase of engagement and wedding rings, with the understanding that they were given on the condition that she marry him. When the defendant left him for another man, the plaintiff sued her for recovery of these gifts. Justice Musmanno explained the conditional gift principle:

> A gift given by a man to a woman on condition that she embark on the sea of matrimony with him is no different from a gift based on the condition that the donee sail on any other sea. If, after receiving the provisional gift, the donee refuses to leave the harbor,—if the anchor of contractual performance sticks in the sands of irresolution and procrastination—the gift must be restored to the donor.

*Id.* at 507, 136 A.2d at 130.

Where the parties disagree, however, is: (1) what is the condition of the gift (i.e., acceptance of the engagement or the marriage itself), and (2) whether fault is relevant to determining return of the ring. Janis argues that the condition of the gift is acceptance of the marriage proposal, not the performance of the marriage ceremony. She also contends that Pennsylvania law, which treats engagement gifts as implied-in-law conditional gifts, has never recognized a right of recovery in a donor who severs the engagement. In her view, we should not recognize such a right where the donor breaks off the engagement, because, if the condition of the gift is performance of the marriage ceremony, that would reward a donor who prevents the occurrence of the condition, which the donee was ready, willing, and eagerly waiting to perform.

Janis first argues that the condition of the gift is acceptance of the proposal of marriage, such that acceptance

of the proposal vests absolute title in the donee. This theory is contrary to Pennsylvania's view of the engagement ring situation. In *Ruehling v. Hornung*, 98 Pa.Super. 535 (1930), the Superior Court provided what is still the most thorough Pennsylvania appellate court analysis of the problem:

> It does not appear whether the engagement was broken by plaintiff or whether it was dissolved by mutual consent. It follows that in order to permit a recovery by plaintiff, it would be necessary to hold that the gifts were subject to the implied condition that they would be returned by the donee to the donor whenever the engagement was dissolved. Under such a rule *the marriage would be a necessary prerequisite* to the passing of an absolute title to a Christmas gift made in such circumstances. We are unwilling to go that far, *except as to the engagement ring.*

*Id.* at 540 (emphasis added). This Court later affirmed that "[t]he promise to return an antenuptial gift made in contemplation of marriage *if the marriage does not take place* is a fictitious promise implied in law." *Semenza v. Alfano*, 443 Pa. 201, 204, 279 A.2d 29, 31 (1971) (emphasis added). Our caselaw clearly recognizes the giving of an engagement gift as having an implied condition that the marriage must occur in order to vest title in the donee; mere acceptance of the marriage proposal is not the implied condition for the gift.

Janis' argument that Pennsylvania law does not permit the donor to recover the ring where the donor terminates the engagement has some basis in the few Pennsylvania authorities that have addressed the matter. The following language from *Ruehling* implies that Janis' position is correct:

> We think that it [the engagement ring] is always given subject to the implied condition that if the marriage does not take place either because of the death, or a disability recognized by the law on the part of, either party, or by breach of the contract by the donee, or its dissolution by mutual consent, the gift shall be returned.

*Ruehling*, 98 Pa.Super. at 540. Noticeably absent from the recital by the court of the situations where the ring must be returned is when the donor breaks the engagement. Other

Pennsylvania authorities also suggest that the donor cannot recover the ring when the donor breaks the engagement. *See* 7 Summary of Pennsylvania Jurisprudence 2d § 15:29, p. 111 ("upon breach of the marriage engagement by the donee, the property may be recovered by the donor"); 17 Pennsylvania Law Encyclopedia, "Gifts," § 9, p. 118 (citing to a 1953 common pleas court decision, "[i]f, on the other hand, the donor wrongfully terminates the engagement, he is not entitled to return of the ring").

■ This Court, however, has not decided the question of whether the donor is entitled to return of the ring where the donor admittedly ended the engagement. In the context of our conditional gift approach to engagement rings, the issue we must resolve is whether we will follow the fault-based theory, argued by Janis, or the no-fault rule advocated by Rodger. Under a fault-based analysis, return of the ring depends on an assessment of who broke the engagement, which necessarily entails a determination of why that person broke the engagement. A no-fault approach, however, involves no investigation into the motives or reasons for the cessation of the engagement and requires the return of the engagement ring simply upon the nonoccurrence of the marriage.

The rule concerning the return of a ring founded on fault principles has superficial appeal because, in the most outrageous instances of unfair behavior, it appeals to our sense of equity. Where one fiancée has truly "wronged" the other, depending on whether that person was the donor of the ring or the donee, justice appears to dictate that the wronged individual should be allowed to keep, or have the ring returned. However, the process of determining who is "wrong" and who is "right," when most modern relationships are complex circumstances, makes the fault-based approach less desirable. A thorough fault-based inquiry would not only end with the question of who terminated the engagement, but would also examine that person's reasons. In some instances the person who terminated the engagement may have been entirely justified in his or her actions. This kind of inquiry would invite the parties to stage the most bitter and unpleas-

ant accusations against those whom they nearly made their spouse, and a court would have no clear guidance with regard to how to ascertain who was "at fault." The Supreme Court of Kansas recited the difficulties with the fault-based system:

> What is fault or the unjustifiable calling off of an engagement? By way of illustration, should courts be asked to determine which of the following grounds for breaking an engagement is fault or justified? (1) The parties have nothing in common; (2) one party cannot stand prospective in-laws; (3) a minor child of one of the parties is hostile to and will not accept the other party; (4) an adult child of one of the parties will not accept the other party; (5) the parties' pets do not get along; (6) a party was too hasty in proposing or accepting the proposal; (7) the engagement was a rebound situation which is now regretted; (8) one party has untidy habits that irritate the other; or (9) the parties have religious differences. The list could be endless.

*Heiman v. Parrish*, 262 Kan. 926, 942 P.2d 631, 637 (1997).

A ring-return rule based on fault principles will inevitably invite acrimony and encourage parties to portray their ex-fiancées in the worst possible light, hoping to drag out the most favorable arguments to justify, or to attack, the termination of an engagement. Furthermore, it is unlikely that trial courts would be presented with situations where fault was clear and easily ascertained and, as noted earlier, determining what constitutes fault would result in a rule that would defy universal application.

The approach that has been described as the modern trend is to apply a no-fault rule to engagement ring cases. *See Vigil v. Haber*, 888 P.2d at 455 (N.M.1994). Courts that have applied no-fault principles to engagement ring cases have borrowed from the policies of their respective legislatures that have moved away from the notion of fault in their divorce statutes. *See, e.g., Vigil, supra* (relying on the New Mexico legislature's enactment of the first no-fault divorce statute); *Aronow v. Silver*, 223 N.J.Super. 344, 538 A.2d 851 (1987) (noting New Jersey's approval of no-fault divorce). As described by the court in *Vigil*, this trend represents a move

"towards a policy that removes fault-finding from the personal-relationship dynamics of marriage and divorce." *Vigil*, 888 P.2d at 457. Indeed, by 1986, with the passage by the South Dakota legislature of no-fault divorce provisions, all fifty states had adopted some form of no-fault divorce. Doris Jonas Freed & Timothy B. Walker, *Family Law in the Fifty States: An Overview*, 19 Fam. L.Q. 331, 335 (1986). Pennsylvania, no exception to this trend, recognizes no-fault divorces.[2] *See* 23 Pa.C.S. § 3301(c), (d). We agree with those jurisdictions that have looked towards the development of no-fault divorce law for a principle to decide engagement ring cases, and the inherent weaknesses in any fault-based system lead us to adopt a no-fault approach to resolution of engagement ring disputes.

Having adopted this no-fault principle, we still must address the original argument that the donor should not get return of the ring when the donor terminates the engagement. Such a rule would be consonant with a no-fault approach, it is argued, because it need not look at the reasons for termination of the engagement; if there is proof that the donor ended the relationship, then he has frustrated the occurrence of the condition and cannot benefit from that. In other words, we are asked to adopt a no-fault approach that would always deny the donor return of the ring where the donor breaks the engagement.

■ We decline to adopt this modified no-fault position,[3] and hold that the donor is entitled to return of the ring even if

2. The Superior Court explained the rationale behind the legislature's enactment, in 1980, of provisions for no-fault divorce:

> we emphasize that the purpose of the legislature's enactment of no-fault provisions in divorce in addition to the traditional fault provisions was to provide for dissolution of marriage in a manner which would keep pace with contemporary social realities and not to advance "the vindication of private rights or the punishment of matrimonial wrongs."

*Jayne v. Jayne*, 443 Pa.Super. 664, 674, 663 A.2d 169, 174 (1995) (citations omitted).

3. The modified no-fault position is no more satisfactory than a strict no-fault system because it, too, would create an injustice whenever the donor who called off the wedding had compelling reasons to do so.

the donor broke the engagement. We believe that the benefits from the certainty of our rule outweigh its negatives, and that a strict no-fault approach is less flawed than a fault-based theory or modified no-fault position.[4]

We affirm the Order of the Superior Court.

Justice CAPPY files a dissenting opinion in which Justices CASTILLE and SAYLOR join.

Justice CASTILLE files a dissenting opinion in which Justices CAPPY and SAYLOR join.

CAPPY, Justice, dissenting.

The majority advocates that a strict no-fault policy be applied to broken engagements. In endorsing this view, the majority argues that it is not only the modern trend but also the approach which will eliminate the inherent weaknesses of a fault based analysis. According to the majority, by adopting a strict no fault approach, we will remove from the courtroom the necessity of delving into the inter-personal dynamics of broken engagements in order to decide which party retains possession of the engagement ring. This view brings to mind the words of Thomas Campbell from *The Jilted Nymph:* "Better be courted and jilted than never be courted at all." As I cannot endorse this approach, I respectfully dissent.

An engagement ring is a traditional token of the pledge to marry. It is a symbol of nuptial intent dating back to AD 860. The engagement ring was to be of a valued metal representing a financial sacrifice for the husband to be. Two other customs regarding the engagement ring were established in that same century: forfeiture of the ring by a man who reneged on a marriage pledge; surrender of the ring by the woman who broke off an engagement. *See* Charles Panati, *Extraordinary Origins of Everyday Things (copyright 1987).* This concept is consistent with conditional gift law, which has always been followed in Pennsylvania. *Stanger v. Epler,* 382

---

**4.** Although other "scenarios" related to the consequences of a cancelled wedding can undoubtedly be "envisioned," they are not presented for decision in this case and therefore warrant no comment.

Pa. 411, 115 A.2d 197 (1955); *Ruehling v. Hornung*, 98 Pa.Super. 535 (1930); C.J.S. Gifts § 61. When the marriage does not take place the agreement is void and the party who prevented the marriage agreement from being fulfilled must forfeit the engagement ring. *Pavlicic v. Vogtsberger*, 390 Pa. 502, 136 A.2d 127 (1957).

The majority urges adoption of its position to relieve trial courts from having the onerous task of sifting through the debris of the broken engagement in order to ascertain who is truly at fault and if there lies a valid justification excusing fault. Could not this theory justifying the majority's decision be advanced in all other arenas that our trial courts must venture? Are broken engagements truly more disturbing than cases where we ask judges and juries to discern possible abuses in nursing homes, day care centers, dependency proceedings involving abused children, and criminal cases involving horrific, irrational injuries to innocent victims? The subject matter our able trial courts address on a daily basis is certainly of equal sordidness as any fact pattern they may need to address in a simple case of who broke the engagement and why.

I can envision a scenario whereby the prospective bride and her family have expended thousands of dollars in preparation for the culminating event of matrimony and she is, through no fault of her own, left standing at the altar holding the caterer's bill. To add insult to injury, the majority would also strip her of her engagement ring. Why the majority feels compelled to modernize this relatively simple and ancient legal concept is beyond the understanding of this poor man.

Accordingly, as I see no valid reason to forgo the established precedent in Pennsylvania for determining possession of the engagement ring under the simple concept of conditional gift law, I cannot endorse the modern trend advocated by the majority. Respectfully, I dissent.

Justices CASTILLE and SAYLOR join this dissenting opinion.

CASTILLE, Justice, dissenting.

I dissent from the majority's opinion because I do not believe that a no-fault policy should be applied to broken engagements and the issue of which party retains the engagement ring. The Restatement of Restitution, § 58 comment c, discusses the return of engagement rings and states that:

> Gifts made in the hope that a marriage or contract of marriage will result are not recoverable, in the absence of fraud. Gifts made in anticipation of marriage are not ordinarily expressed to be conditional and, although there is an engagement to marry, if the marriage fails to occur without the fault of the donee, normally the gift cannot be recovered. If, however, the donee obtained the gift fraudulently or if the gift was made for a purpose which could be obtained only by the marriage, a donor who is not himself at fault is entitled to restitution if the marriage does not take place, even if the gift was money. If there is an engagement to marry and the donee, having received the gift without fraud, later wrongfully breaks the promise of marriage, the donor is entitled to restitution if the gift is an engagement ring, a family heirloom or other similar thing intimately connected with the marriage, but not if the gift is one of money intended to be used by the donee before the marriage.

I believe that the Restatement approach is superior to the no-fault policy espoused by the majority because it allows equity its proper place in the outcome. Here, it is undisputed that appellee twice broke his engagement with appellant. Clearly, appellant was not at fault in the breaking off of the couple's engagement, and there is no allegation that she fraudulently induced appellee to propose marriage to her twice. Fairness dictates that appellant, who is the innocent party in this couple's ill-fated romantic connection, retain the engagement ring, which was given to her by appellee as an unconditional gift. I would therefore reverse the order of the Superior Court.

Justices CAPPY and SAYLOR join this dissenting opinion.