COOPER, Appellant,

v.

SMITH et al., Appellees.

[Cite as *Cooper v. Smith,* 155 Ohio App.3d 218, 2003-Ohio-6083.]

Court of Appeals of Ohio,
Fourth District, Lawrence county.

No. 03CA6.

Decided Nov. 7, 2003.

D. Scott Bowling, for appellant.

Anderson & Anderson and Robert C. Anderson, for appellees.

HARSHA, Judge.

{¶ 1} Lester Cooper appeals from a judgment of the Lawrence County Common Pleas Court dismissing his complaint, which sought reimbursement for gifts he had given to his ex-fiancée, Julie Smith, and her mother, Janet Smith. Cooper contends that the gifts he gave to Julie were given in contemplation of marriage and should be returned to him now that the engagement has ended. In addition, he contends that the gifts he gave to Janet should be returned to him under a theory of unjust enrichment. With the exception of the engagement ring, the gifts Cooper gave to Julie were irrevocable inter vivos gifts. Thus, he is not entitled to their return. Moreover, because enrichment of the donee is the intended purpose of a gift, there is nothing "unjust" about allowing Janet to retain the gifts she received from Cooper in the absence of fraud, overreaching, or some other circumstance. Accordingly, the judgment of the trial court is affirmed.

{¶ 2} In May 2001, Cooper suffered serious injury that caused him to be hospitalized for an extended period of time. While he was hospitalized, Julie, whom Cooper had met the year before, and Janet made numerous trips to visit him. Although Julie was legally married to another man at the time, a romantic relationship developed between Cooper and Julie. While still in the hospital, Cooper proposed to Julie, and she accepted, indicating that she would marry him

after she divorced her husband. Although Julie obtained a divorce from her husband in October 2001, she and Cooper did not marry.

{¶ 3} Cooper ultimately received an $180,000 settlement for his injuries. After being released from the hospital, Cooper moved in with Janet and Julie. Over the next couple of months, Cooper purchased a number of items for Julie, including a diamond engagement ring, a car, a computer, a tanning bed, and horses. Cooper also paid off Janet's car loan and made various improvements to her house, such as having a new furnace installed and having wood flooring laid in the kitchen. By December 2001, the settlement money had run out.

{¶ 4} In June 2002, an incident occurred between Janet and Cooper, and he moved out of the house. However, he and Julie continued their relationship. One month after moving out, Cooper informed Julie that he intended to sue Janet to recover the money he had invested in her house. Julie responded by telling Cooper that she could not be with him if he sued her mother. That same month, Cooper filed suit against both Julie and Janet.

{¶ 5} In December 2002, Cooper's case proceeded to trial before the magistrate. At trial, Cooper testified that the gifts he gave to Julie were given in contemplation of marriage. He also attempted to show that the gifts he had given to Janet, including the improvements to her house, were conditional gifts. He indicated that he had paid off Janet's car loan so that when the settlement money ran out, they could live on the money that was previously being used for the monthly car payment. He also indicated that he paid for the improvements to Janet's house because he believed he would be living there in the future.

{¶ 6} At the conclusion of Cooper's case-in-chief, appellees moved to dismiss his complaint. The magistrate granted the motion, concluding that even if Cooper's evidence was viewed in the most favorable light, appellees were entitled to dismissal. The magistrate concluded that the gifts Cooper gave to Julie were not given in contemplation of marriage since Julie was legally married to another man at the time. The magistrate further found that even if the gifts were given in contemplation of marriage, Cooper was not entitled to their return because he unjustifiably broke the engagement. With respect to the gifts Cooper gave Janet, the magistrate found that there was no evidence that the gifts were given on any condition. Rather, the magistrate concluded that the gifts were final and could not be recovered since "a gift is an unearned enrichment that cannot be converted into an unjust enrichment."

{¶ 7} After the magistrate filed his decision recommending that Cooper's complaint be dismissed, Cooper filed objections. In March 2003, the trial court overruled Cooper's objections to the magistrate's decision and entered a judgment dismissing Cooper's complaint. Cooper now appeals and raises the following assignments of error:

"ASSIGNMENT OF ERROR NO. 1—The trial court erred as a matter of law by adopting the magistrate's decision granting appellees' motion to dismiss. ASSIGNMENT OF ERROR NO. 2—The trial court erred as a matter of law by failing to restore various assets retained by appellee Julie Smith under theories of gifts in anticipation of marriage and unjust enrichment. ASSIGN-MENT OF ERROR NO. 3—The trial court erred as a matter of law by failing to restore various assets retained by appellee Janet Smith under a theory of unjust enrichment."

{¶ 8} Civ.R. 41(B)(2) permits a defendant in a nonjury action to move for dismissal of the action after the close of the plaintiff's case. Dismissals under Civ.R. 41(B)(2) are similar in nature to directed verdicts in jury actions; however, the standards for the two motions are not the same. See Civ.R. 41(B)(2) and Comment 3. Because a Civ.R. 41(B)(2) dismissal is used in nonjury actions, it requires the trial court and reviewing court to apply different tests. *Cent. Motors Corp. v. Pepper Pike* (1979), 63 Ohio App.2d 34, 48, 13 O.O.3d 347, 409 N.E.2d 258.

{¶ 9} Civ.R. 41(B)(2) specifically provides that the trial court may consider both the law and the facts. Thus, under the rule, the trial judge, as the trier of fact, does not view the evidence in a light most favorable to the plaintiff but instead actually determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard. See *L.W. Shoemaker, M.D., Inc. v. Connor* (1992), 81 Ohio App.3d 748, 612 N.E.2d 369; *Harris v. Cincinnati* (1992), 79 Ohio App.3d 163, 607 N.E.2d 15. Even if the plaintiff has presented a prima facie case, dismissal is still appropriate where the trial court determines that the necessary quantum of proof makes it clear that plaintiff will not prevail. *Fenley v. Athens Cty. Genealogical Chapter* (May 28, 1998), Athens App. No. 97CA36, 1998 WL 295496, citing 3B Moore, Federal Practice (1990), Paragraph 41.13(4), at 41–177. However, if the judge finds that the plaintiff has proven the relevant facts by the necessary quantum of proof, the motion must be denied and the defendant required to put on evidence. *Central Motors Corp.*

{¶ 10} To the extent that the trial court's determination rests on findings of fact, those findings will not be overturned on appellate review unless they are against the manifest weight of the evidence. *Friend v. Elsea, Inc.* (Sept. 26, 2000), Pickaway App. No. 98CA29, 2000 WL 1468499. However, the application of legal standards to those findings is reviewable de novo, thus presenting us with a mixed question of law and fact. *Fenley,* citing 3B Moore, Federal Practice (1990), Paragraph 41.13(1), at 41–166; *Connor,* supra.

{¶ 11} Cooper's first assignment of error merely states the underlying theme of his appeal and contains no arguments. Instead, his second and third assign-

ments of error serve as the arguments in support of his first assignment of error. Thus, a resolution of those assignments of error will necessarily resolve Cooper's first assignment of error.

{¶ 12} In his second assignment of error, Cooper contends that the court erred in concluding he did not state a claim for recovery under a theory of gifts in contemplation of marriage. Acknowledging that the Ohio appellate districts are split on the issue, Cooper urges us to adopt a "no-fault" rule regarding gifts in contemplation of marriage. Under such a rule, gifts given in contemplation of marriage are returned to the donor if the marriage does not occur, regardless of who is at fault in ending the engagement. Julie, on the other hand, urges us to adopt a fault-based rule regarding gifts in contemplation of marriage. She contends that Cooper should not recover the gifts he gave her because he unjustifiably broke the engagement by suing her mother.

{¶ 13} The term "gifts in contemplation of marriage" refers to gifts made during the engagement period, following the couple's agreement to marry. Annotation, Rights in Respect of Engagement and Courtship Presents When Marriage Does Not Ensue (1996), 44 A.L.R.5th 1, 17. Gifts in contemplation of marriage become problematic when the marriage does not occur. If a donor gives gifts in contemplation of marriage and the marriage does not occur, is the donor entitled to recover the gifts? If the donor is entitled to recover the gifts, is that right absolute or is it subject to limitations?

{¶ 14} The majority of cases addressing gifts in contemplation of marriage deals exclusively with engagement rings. However, our research has uncovered some cases, including two from Ohio, that address gifts other than engagement rings. See *Somple v. Livesay* (July 31, 1979), Mahoning App. No. 78CA16; *Zsigmond v. Vandemberg* (Dec. 29, 1995), Portage App. No. 95–P–0006, 1995 WL 815349 (likening the recovery of gifts after an annulment to the recovery of gifts given in contemplation of marriage). After reviewing the cases from Ohio and elsewhere, we have identified five possible approaches to the present issue.

{¶ 15} Under the first approach, the donor is denied recovery if the donee was legally married to someone else at the time the donor and donee became engaged. See *Morgan v. Wright* (1963), 219 Ga. 385, 133 S.E.2d 341; *Lowe v. Quinn* (1971), 27 N.Y.2d 397, 318 N.Y.S.2d 467, 267 N.E.2d 251; *Hooven v. Quintana* (1980), 44 Colo.App. 395, 618 P.2d 702. But, cf., *Witkowski v. Blaskiewicz* (1994), 162 Misc.2d 66, 615 N.Y.S.2d 640. This approach recognizes that an agreement to marry where one party is already married is void as against public policy. See *Lowe*. Where the donor has sought equitable relief, courts adopting this approach have denied recovery based on the doctrine of "unclean hands." *Lowe; Morgan*. As the Supreme Court of Georgia stated: "The deliberate attempt to take another man's wife from him, and entering into an

engagement with her to marry at a time when she could not lawfully marry, and giving a ring to further such an unlawful engagement is a defiance of public policy and constitutes the rankest sort of unclean hands. The doors of equity are closed to petitioner and deny him any relief whatsoever." *Morgan*, 219 Ga. 385, 133 S.E.2d at 343.

{¶ 16} Although the trial court adopted this approach in denying Cooper recovery, we are not persuaded that this is the best approach. While this approach punishes the donor for his conduct, it rewards a party that is equally guilty. *Witkowski*, supra. Julie knew when she accepted Cooper's proposal that she could not lawfully marry him, yet she accepted the proposal anyway. We see no reason to adopt a rule that allows Julie to benefit from her conduct while punishing Cooper for his.

{¶ 17} The second approach treats all gifts exchanged during the engagement period as irrevocable inter vivos gifts. See *Albinger v. Harris* (2002), 310 Mont. 27, 48 P.3d 711; *Heiman v. Parrish* (1997), 262 Kan. 926, 942 P.2d 631 (Marquardt, J., dissenting). A variation on this approach treats the gifts as irrevocable inter vivos gifts unless they are expressly conditioned on the subsequent marriage. See *Linton v. Hasty* (Ind.App.1988), 519 N.E.2d 161. This approach adheres to general gift law, which provides that an inter vivos gift is irrevocable once complete. See *Albinger*. Courts adopting this approach refuse to imply a condition on the gifts simply because they were given during the engagement period. Id.

{¶ 18} This approach is easy to apply and encourages a donor to think twice before giving extravagant gifts. Moreover, it does not allow a donor to recover/revoke a gift simply because he or she later regrets having given it. However, without an exception for fraud, this approach works an injustice on unsuspecting donors who are deceived by wily donees. Moreover, the variation on this approach attempts to apply logical reasoning to an emotional situation. During the engagement period, the donor is focused upon the romantic nature of the relationship and is not likely to consider the possibility that the marriage may not occur. Thus, a donor only rarely thinks about putting a condition on the gifts he or she gives.

{¶ 19} The third approach treats the engagement ring as a conditional gift but treats all other gifts as irrevocable inter vivos gifts unless they were expressly conditioned on the subsequent marriage. See *Albanese v. Indelicato* (1947), 25 N.J.Misc. 144, 51 A.2d 110; *Gikas v. Nicholis* (1950), 96 N.H. 177, 71 A.2d 785. This approach recognizes that an engagement ring symbolizes the couple's promise to marry. See *Albanese*. Because of that symbolic significance, it implies a condition with respect to the engagement ring only. See id. This approach also recognizes that "in the natural course of events it would be unusual

for the donor to give the engagement ring upon the expressed condition that marriage was to ensue." *Gikas.* Thus, it implies a condition to the gift of the engagement ring. However, this approach recognizes that the other gifts lack the symbolic significance of the engagement ring. See *Albanese.* It recognizes that gifts other than the engagement ring are "only a token of the love and affection which [the donor] bore for the [donee]." *Albanese,* 25 N.J. Misc. 144, 51 A.2d at 110. It refuses to allow the donor to recover the gift simply because he or she later regrets having given it. Thus, it applies general gift law and treats the other gifts as irrevocable inter vivos gifts unless they were expressly conditioned on the subsequent marriage.

{¶ 20} Like the second approach, this approach is easy to apply and would encourage donors to think twice before giving extravagant gifts. However, it suffers from the same disadvantages as the second approach. It too would require a fraud exception to avoid injustice. Moreover, it also assumes that the donor will consider the possibility that the marriage might not occur.

{¶ 21} Both the fourth (fault-based) and fifth (no-fault) approaches generally allow recovery based on a conditional gift theory, although the fault-based approach contains limitations on recovery. See, generally, Annotation, 44 A.L.R.5th at 18 ("A predominate theory used in ordering recovery of engagement gifts to the donor relies upon the theory of conditional gifts."). Under both approaches, courts will imply a condition on the gifts because of the nature of the engagement period or, in the case of engagement rings, the nature of the gift. Although the fault-based approach used to be the majority position, the modern trend leans toward a no-fault approach.

{¶ 22} The fault-based approach permits the donor to recover the gifts unless he or she unjustifiably broke the engagement. See *Wion v. Henderson* (1985), 24 Ohio App.3d 207, 24 OBR 330, 494 N.E.2d 133. See, also, *Curtis v. Anderson* (Tex.App.2003), 106 S.W.3d 251; *Spinnell v. Quigley* (1990), 56 Wash.App. 799, 785 P.2d 1149. This approach appeals to society's sense of justice, especially in those situations where the donor has truly "wronged" the donee. See *Lindh v. Surman* (1999), 560 Pa. 1, 8, 742 A.2d 643 (discussing the fault approach, but ultimately adopting a no-fault rule). This approach also recognizes that if the donor had kept the promise, the gifts would belong to the donee. See *Mate v. Abrahams* (N.J.Cty.Ct.1948), 62 A.2d 754. Thus, it attempts to prevent the donor from being rewarded for breaking a promise. See id. In the engagement ring situation, this approach also recognizes that the donee has often expended money towards the wedding by the time the donor ends the engagement. See *Heiman v. Parrish* (1997), 262 Kan. 926, 942 P.2d 631 (Marquardt, J., dissenting). Since the donee has no recourse for recovering the money, allowing the donee to keep the engagement ring may serve as compensation. However, as a discussion

of the no-fault approach will show, the fault-based approach has its disadvantages.

{¶ 23} Under the no-fault approach, gifts given in contemplation of marriage are returned to the donor if the marriage does not occur, regardless of who is at fault in ending the engagement.[1] See *Lyle v. Durham* (1984), 16 Ohio App.3d 1, 16 OBR 1, 473 N.E.2d 1216; *McIntire v. Raukhorst* (1989), 65 Ohio App.3d 728, 585 N.E.2d 456; *Patterson v. Blanton* (1996), 109 Ohio App.3d 349, 672 N.E.2d 208; *Zsigmond,* supra. See, also, *Vigil v. Haber* (1994), 119 N.M. 9, 888 P.2d 455; *Heiman v. Parrish* (1997), 262 Kan. 926, 942 P.2d 631; *Lindh v. Surman* (1999), 560 Pa. 1, 742 A.2d 643; *Aronow v. Silver* (1987), 223 N.J.Super. 344, 538 A.2d 851. Courts adopting this approach have noted that legislatures and courts are moving away from a fault-based approach to divorce. See *Vigil; Aronow.* These courts conclude that "the policy statements that govern 'our approach to broken marriages [are] equally relevant to broken engagements.'" *Vigil,* quoting *Brown v. Thomas* (1985), 127 Wis.2d 318, 379 N.W.2d 868. Courts adopting this approach also point to the difficulties involved in determining who is at fault and whether a person's reasons for ending an engagement are justifiable. *Lyle; Patterson; Heiman.* These courts express a concern that a fault-based approach will lead to acrimonious lawsuits, with each party attempting to blame the other for the termination of the engagement. *Lindh; Vigil,* citing *Gaden v. Gaden* (1971), 29 N.Y.2d 80, 323 N.Y.S.2d 955, 272 N.E.2d 471.

{¶ 24} Having carefully considered the five different approaches, we conclude that the third approach, which implies a condition on the gift of the engagement ring only, is the best approach. The engagement ring has a special significance because it symbolizes the couple's promise to marry. As a symbol of the promise to marry, what value does the ring have for the donee once the engagement is ended? Moreover, we realize that a donor proposing to his or her beloved is unlikely to expressly condition the gift of the engagement ring on the occurrence of the marriage. Not only do we realize how unlikely this is, we recognize how unromantic such a requirement would be. Thus, because of the engagement ring's symbolic significance, we are willing to imply a condition to the gift of the engagement ring. Unless the parties have agreed otherwise, the donor is entitled to recover the engagement ring (or its value) if the marriage does not occur, regardless of who ended the engagement.

{¶ 25} While we are willing to imply a condition concerning the engagement ring, we are unwilling to do so for other gifts given during the engagement

---

1. A number of the cases cited in support of both the fault-based and no-fault approach deal exclusively with engagement rings. Thus, it is possible that those courts would not extend that approach to gifts other than engagement rights.

period. Unlike the engagement ring, the other gifts have no symbolic meaning. Rather, they are merely "token[s] of the love and affection which [the donor] bore for the [donee]." *Albanese,* supra. As the Albanese court noted: "Many gifts are made for reasons that sour with the passage of time." Unfortunately, gift law does not allow a donor to recover/revoke an inter vivos gift simply because his or her reasons for giving it have "soured."

{¶ 26} Generally, a completed inter vivos gift is absolute and irrevocable. See *Romaniw–Dubas v. Polowyk* (Aug. 10, 2000), Cuyahoga App. No. 75980, 2000 WL 1144784, citing *Smith v. Shafer* (1993), 89 Ohio App.3d 181, 623 N.E.2d 1261. However, a donor may impose conditions on a gift so that if the conditions fail, the gift also fails. *Wilkin v. Wilkin* (1996), 116 Ohio App.3d 315, 318, 688 N.E.2d 27. If we were to imply a condition on gifts given during the engagement period, then every gift the donor gave, no matter how small or insignificant, would be recoverable. Surely, the donor will give some gifts during the engagement period that are intended as absolute gifts. However, with an implied condition, the donor would have to expressly indicate that he does not expect the gift back in order to make an absolute gift. Such a rule turns traditional gift law on its head. We believe that the best approach is to treat gifts exchanged during the engagement period (excluding the engagement ring) as absolute and irrevocable inter vivos gifts unless the donor has expressed an intent that the gift be conditioned on the subsequent marriage.

{¶ 27} Applying this approach to the present case, we affirm the trial court's ruling, although for different reasons. At trial, Cooper testified that Julie returned the diamond engagement ring to him before he filed the lawsuit. Therefore, Cooper could not prevail on a claim for return of the engagement ring because he already had possession of it. As for the other gifts, Cooper offered no evidence establishing that he gave the gifts on the express condition that they be returned to him if the engagement ended. Thus, the gifts are irrevocable inter vivos gifts, and Cooper is not entitled to their return.

{¶ 28} Cooper also argues, under his second assignment of error, that the theory of unjust enrichment allows him to recover the gifts he gave to Julie. It is not entirely clear from Cooper's brief whether this is a separate argument or whether it is part of his argument regarding gifts in contemplation of marriage. However, even if it is intended as a separate argument, it has no merit. The issue of unjust enrichment does not arise with absolute gifts because "[e]nrichment of the donee is the intended purpose of a gift." *Lane v. Saunders* (Dec. 13, 1985), Gallia App. No. 85CA5, 1985 WL 17472. Thus, while the donee is enriched by an absolute gift, the enrichment is not unjust. See the discussion that follows. Accordingly, Cooper's second assignment of error has no merit.

{¶ 29} In his third assignment of error, Cooper contends that the court erred in concluding that he could not recover the gifts he gave to Janet. He argues that the gifts were conditional gifts and should be returned to him under a theory of unjust enrichment. In response, Janet argues that the court correctly concluded that the gifts were absolute, rather than conditional.

{¶ 30} Unjust enrichment occurs "when a party retains money or benefits which in justice and equity belong to another." *Liberty Mut. Ins. Co. v. Indus. Comm.* (1988), 40 Ohio St.3d 109, 111, 532 N.E.2d 124; *Dixon v. Smith* (1997), 119 Ohio App.3d 308, 317, 695 N.E.2d 284. In order to prevail on an unjust enrichment theory, the plaintiff must establish three elements: "(1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment." *Pine v. Price*, Columbiana App. No. 01–CO–46, 2002-Ohio-5223, 2002 WL 31168905. See, also, *Dixon*, supra; *Hatten v. Shaw* (May 15, 2000), Lawrence App. No. 99CA30, 2000 WL 670305.

{¶ 31} As we noted earlier, once an inter vivos gift is complete, it is generally absolute and irrevocable. See *Romaniw–Dubas v. Polowyk* (Aug. 10, 2000), Cuyahoga App. No. 75980, 2000 WL 1144784. However, a donor may impose conditions on a gift so that if the conditions fail, the gift fails. *Wilkin v. Wilkin* (1996), 116 Ohio App.3d 315, 318, 688 N.E.2d 27. "Whether a gift is conditional or absolute is a question of the donor's intent, to be determined from any express declaration by the donor at the time of the making of the gift or from the circumstances." 38 American Jurisprudence 2d (1999) 767–768, Gifts, Section 72. In its entry, the trial court found that "there is simply no evidence that [the gifts] were given on any condition, but instead were absolute and irrevocable." Having reviewed the record, we conclude that there is some competent, credible evidence to support the court's finding.

{¶ 32} Cooper contends that he paid for the improvements to Janet's house only because he believed that he would be living there for the rest of his life. However, the record indicates that Cooper merely presumed he would be living there in the future. During the trial, he testified that he "figured [he] was going to be living there and [he] was going to be married to Julie." There is nothing in the record to indicate that Cooper told Janet that he was giving her the gifts because he planned to live in her house in the future. In fact, when confronted with his deposition testimony, Cooper admitted that he never expressly told Janet that he was giving her the gifts because he expected to live in her house.

{¶ 33} Cooper also contends that he paid off Janet's car loan because they agreed that she would help support him when the settlement money ran out.

However, a review of the record does not indicate such an explicit agreement. According to Cooper's testimony, Julie suggested that it would be a good idea to pay off Janet's car loan so that they could live on the money normally used to pay the monthly car payment when the settlement money ran out. Cooper testified that he thought that it was a good idea because he was going to be living in the house. However, as stated above, Cooper simply presumed that he would live in Janet's house in the future. Thus, he assumed that he would benefit from having the extra money around each month. There is nothing in the record to indicate that Janet promised to support Cooper if he paid off her car payment. Nor is there evidence that Cooper expressed an intent that the gift be conditioned on her supporting him in the future.

{¶ 34} Finally, Cooper contends that he purchased a horse trailer and other related equipment for a business the parties were planning to start. He asserts that Janet has retained possession of the items even though she did not contribute to the purchase of them. During his testimony, Cooper testified that he gave Janet $10,000. He testified that he gave her the money "because nobody lives nowhere for free." According to Janet's testimony, she used $7,000 of the money to purchase a horse trailer. She testified that she attempted to return the remaining $3,000 to Cooper but that he told her to keep it. Thus, some evidence supports the trial court's conclusion that the $10,000, which Janet used to purchase the horse trailer, was an absolute gift. As for the related equipment, Cooper does not indicate what "related equipment" he is referring to. However, Cooper's testimony contains no mention of the business the parties were planning to start or the horse trailer and related equipment. When questioned about the alleged business, Janet denied knowledge of it. The only witness that offered testimony related to the business was a neighbor of Janet's, and his testimony related solely to the horse trailer.

{¶ 35} Accordingly, we conclude that the court's finding declaring the gifts final and absolute was not against the manifest weight of the evidence. Because the gifts to Janet were final and absolute, no issue of unjust enrichment arises. As noted above, "[e]nrichment of the donee is the intended purpose of a gift." *Lane v. Saunders* (Dec. 13, 1985), Gallia App. No. 85CA5, 1985 WL 17472. Thus, we conclude that Cooper's third assignment of error has no merit.

{¶ 36} In addressing Cooper's first assignment of error, we noted that resolution of his second and third assignments of error would necessarily resolve the first. Having addressed Cooper's second and third assignments of error, we conclude that the court did not err in granting appellees' Civ.R. 41(B)(2) motion. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

PETER B. ABELE and KLINE, JJ., concur.