[Cite as *Khayyam Publishing Co. v. Marzvann*, 2013-Ohio-5332.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| Khayyam Publishing Co., et al., | : | |
| | : | |
| Plaintiffs/Appellants/Cross-Appellees, | : | Case No. 12CA29 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| Dr. Soheyla Marzvaan, | : | |
| | : | DECISION AND JUDGMENT |
| Defendant/Appellee/Cross-Appellant. | : | ENTRY |
| | : | |
| | : | **Released: 11/21/13** |

_____

APPEARANCES:

Gerald A. Mollica, Mollica, Gall, Sloan, Sillery & McCarthy Co., L.P.A., Athens, Ohio, for Plaintiffs/Appellants/Cross-Appellees.

Sky Pettey, Lavelle and Associates, Athens, Ohio, for Defendant/Appellee/Cross-Appellant.

_____

McFarland, P.J.

{¶1} Appellants/Cross-Appellees Reza Aftabizadeh and his business, Khayyam Publishing Company, appeal the summary judgment of the Athens County Court of Common Pleas granting summary judgment in favor of Appellee/Cross-Appellant Soheyla Marzvaan and against them on their claim of unjust enrichment in the amount of $200,000 and against them on their entire fraud

claim.  They also appeal the decision of the trial court following a bench trial in which the trial court found that the parties did not have a contractual agreement for business services or rent and denied them their damages for an alleged breach of contract in the sum of $40,000.  Marzvaan appeals the trial court's judgment following the bench trial against her and awarding Aftabizadeh and Khayyam Publishing $30,000 representing an unpaid loan obligation and the award against her and in favor of them in the amount of $22,800 reflecting the value of certain personal property.  Upon a de novo review of the record supporting the trial court's summary judgment decision, we find that the trial court properly awarded summary judgment in favor of Marzvaan and against Aftabizadeh and Khayyam Publishing on their claim for unjust enrichment as to the $200,000 transfer and on their entire fraud claim.  Further, based upon the manifest weight of the evidence we find that the trial court's decision following a bench trial finding that the parties did not have a contractual agreement was supported by competent, credible evidence. However, we find that the trial court's finding that a loan agreement for $30,000 existed between the parties and  its judgment against Marzvaan and in favor of Aftabizadeh and Khayyam Publishing for $30,000 was against the manifest of the evidence. There was not competent, credible evidence establishing the material elements of a loan between the parties in the sum of $30,000 and we

reverse the court's award to Aftabizadeh and Khayyam Publishing in that amount. Finally we find competent, credible evidence supporting Aftabizadeh's claim for $22,800 in personal property against Marzvaan and affirm the trial court's award on this claim.

## I.    PROCEDURAL HISTORY

{¶2}  Reza Aftabizadeh and Khayyam Publishing filed a complaint against Soheyla Marzvaan in February of 2009 alleging that Aftabizadeh gave Marzvaan $370,000 in anticipation of marriage. He alleged that $100,000 had been returned to him, but that he was still owed $270,000.  He also claimed that he purchased new furniture and brought some of his own personal property to Marzvaan's house based on his belief that he would be residing there. The couple ended their relationship and did not marry. Aftabizadeh sought a judgment in the sum of $300,000, consisting of $270,000 in various cash transfers, plus an estimated $30,000 in personal property. He set forth two counts in his original complaint: one for unjust enrichment and one for fraud.

{¶3}  Marzvaan filed a motion for summary judgment on both counts of the complaint for the entire $270,000, plus the personal property. Marzvaan argued that, although Aftabizadeh alleged that the monies were gifts in anticipation of marriage, he did not place any express conditions on the transfers, Aftabizadeh

never proposed, the couple was never engaged, nor did he ever give Marzaan an engagement ring.  Therefore, she argued, the gifts were not expressly conditioned on marriage, but instead were irrevocable inter vivos gifts. Aftabizadeh opposed Marzvaan's motion for summary judgment and filed his own motion for summary judgment. In his motion, Aftabizadeh abandoned his claims that the transfers were gifts in anticipation of marriage. He re-characterized the $200,000 transfer as a loan to Marzvaan so that she could make a real estate investment on his behalf and the remaining $70,000 in transfers as loans that would require repayment. He also claimed that he loaned the furniture and other personal property to Marzvaan. The trial court granted summary judgment to Marzvaan as to the $200,000 transfer, finding that it was an absolute irrevocable gift.  The court also granted Marzvaan's motion as to Aftabizadeh's fraud claim finding that the parties had a caring and meaningful relationship with one another, but eventually broke up. "That's life – not fraud," the court concluded.  The court denied Marzvaan's motion as to Aftabizadeh's unjust enrichment claims for $70,000 and the personal property, finding that there were genuine issues of material fact as to these transfers and insufficient information concerning the personal property. The court denied Aftabizadeh's cross motion for summary judgment in its entirety.

{¶4}  In February 2012, three years after they filed their original complaint,

Aftabizadeh and Khayyam Publishing, filed an amended complaint in which they added a breach of contract claim for the $70,000 in transfers. In addition to characterizing the transfers as gifts in contemplation of marriage as he had done previously, Aftabizadeh also alleged that he and Khayyam Publishing entered into a contract with Marzaan in which Khayyam Publishing and he were to make installment payments aggregating $70,000 for business services and office space that were never provided by Marzaan. The court set a date for the bench trial and clarified the remaining issues to be tried as Aftabizadeh's unjust enrichment and breach of contract claims as to the $70,000 and the issues related to the personal property.  See Journal Entry, June 25, 2012. After a bench trial, the trial court entered a judgment in favor of Marzaan as to $40,000 of the $70,000 in transfers. The court awarded Aftabizadeh and Khayyam Publishing $30,000 that it characterized as a loan, plus $22,800, which was the value of the personal property, for a total judgment of $52,800 in favor of Aftabizadeh and Khayyam Publishing.

{¶5}  Aftabizadeh and Khayyam Publishing appealed the trial court's judgment granting Marzaan summary judgment as to the $200,000 transfer and the judgment after the bench trial awarding a judgment in her favor on their claim of $40,000.  Marzaan cross-appealed the award of $52,800 in favor of Aftabizadeh.

## II. FACTS

{¶6}  Aftabizadeh and Marzaan first met in 1980 while both were students. Their life's ambitions pulled them in different directions and they lost contact with each other. Aftabizadeh pursued a doctorate degree in mathematics and Marzaan went on to become a dentist. In June of 2006, Aftabizadeh contacted Marzaan and the two became reacquainted.  Aftabizadeh was a divorced mathematics professor at Ohio University and was living in Athens, Ohio.  Marzaan was married, had just opened a dental office, and was living in Ladera Ranch, California.

{¶7}  They began an intimate relationship in August 2006, while Marzvaan was still married. At some point in the spring of 2007 Marzvaan and her husband terminated their marriage.  Marzvaan and Aftabizadeh continued their relationship until Marzvaan ended it in August 2008. During the course of their relationship, Aftabizadeh made six cash transfers to Marzaan.  Two of the transfers are not disputed by the parties and are not part of any of the claims Aftabizadeh and Khayyam Publishing asserted against Marzvaan in the lawsuit. First, Marzaan performed dental services for Aftabizadeh in August and September 2006 for which he paid her $30,000.  Aftabizadeh's $30,000 payment for dental services was not disputed by either party.  Second, Aftabizadeh transferred $100,000 on May 17, 2007 to buy a house at an auction as a real estate investment.  The

purchase did not occur and the money was returned to Aftabizadeh.  This $100,000 transfer is not part of the lawsuit and is not disputed by the parties.

{¶8}  The remaining four transfers that are part of the lawsuit are: (1) $20,000 transfer in October, 2006; (2) $200,000 transfer in January, 2007; (3) $20,000 transfer in April, 2007; and (4) $30,000 transfer in March, 2008. The parties agreed that Aftabziadeh transferred $20,000 in October, 2006 to Marzvaan so that she could pay for advertising expenses associated with her dental practice. He transferred the $200,000 monies to her so she could buy out her husband's one-half interest in the marital home. He transferred $20,000 in April, 2007 to her so that she could pay for living expenses associated with her house. Finally, he transferred $30,000 in March, 2008 so that she could settle a tax dispute with the IRS.

{¶9}  It is undisputed that Aftabizadeh never proposed marriage to Marzvaan and the couple was never engaged to be married. When Aftabizadeh transferred monies to Marzvaan, he did not verbally state that they were conditional upon marriage.  At no time during the transfers did he state to her that they were loans, nor did he express any desire to her that she repay him for the transfers. No written loan agreement exists for any of the transfers.  Likewise, at the time Aftabizadeh made the transfers, he did not express that they were conditional upon him or

Khayyam Publishing receiving office space or business services. No contractual agreement for office space or business services exists.

{¶10} In early 2008, during the preparation of his 2007 tax return, Aftabizadeh informed Marzvaan that he intended to deduct some of the $220,000 in transfers he had made to her in 2007 as business expenses. Marzvaan consulted with her tax accountant who informed her that she could claim up to $70,000 of Aftabizadeh's transfers as business income on her 2007 tax return without incurring an additional tax burden. As a result, Aftabizadeh expensed $70,000 as business expenses in 2007. While in his tax advisor's office, his tax advisor told Aftabizadeh he would need to get documentation to support the $70,000 as a business expenses. Aftabizadeh telephoned Marzvaan from his advisor's office and requested documentation supporting a business expense deduction. Marzvaan immediately fabricated an invoice for business expenses on her accounting software and faxed it to Aftabizadeh's tax advisor's office that same day.

{¶11} In addition to the monetary transfers, Aftabizadeh's lawsuit seeks the return of personal property. Specifically, Aftabizadeh purchased bedroom furniture and had it delivered to Marzvaan's home. He also transported two Persian area rugs, a laptop computer, and a television from Ohio to California during one of his visits. Aftabizadeh valued all of the personal property at $22,800. Marzvaan did

not contest Aftabizadeh's valuation of the personal property.

<u>Appellants/Cross-Appellees First Assignment of Error</u>

I.      THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AGAINST APPELLANTS AS TO THEIR CLAIMS FOR FRAUD AND CERTAIN COMPONENTS OF THEIR CLAIMS FOR UNJUST ENRICHMENT AND BREACH OF CONTRACT.

<u>Standard of Review</u>

{¶12}  When reviewing a trial court's decision on a motion for summary judgment, we conduct a de novo review governed by the standard set forth in Civ.R. 56. *Comer v. Risko,* 106 Ohio St.3d 185, 2005–Ohio–4559, 833 N.E.2d 712, at ¶ 8. Summary judgment is appropriate when the movant has established (1) that there is no genuine issue of material fact, (2) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, with the evidence against that party being construed most strongly in its favor, and (3) that the moving party is entitled to judgment as a matter of law. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46; see also, Civ.R. 56(C).

{¶13}  The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996–Ohio–107,662 N.E.2d 264. To meet its burden, the

moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); see also *Hansen v. Wal–Mart Stores, Inc.,* Ross App. No. 07CA2990, 2008–Ohio–2477, at ¶ 8. After the movant supports the motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." *Id.*

{¶14}  The trial court issued its summary judgment decision on November 8, 2010 on the two claims that were asserted in Aftabizadeh's original complaint: fraud and unjust enrichment. There was no breach of contract claim made in the original complaint.  Thus, the trial court's summary judgment did not contain any decision concerning any breach of contract claim. It was not until 2012, when Aftabizadeh amended his complaint that a breach of contract claim was added to the lawsuit. Thus to the extent that Aftabizadeh's assignment of error contains references to the trial court's summary judgment on his breach of contract claims,

it is not well taken.

{¶15}  The evidence before the trial court when it issued its summary judgment decision consisted of the stipulated facts contained in the parties' motions, the exhibits attached to the motions and the numerous response briefs, which included requests for admissions, interrogatories, affidavits, Marzvaan's deposition taken February 25, 2010, and Aftabizadeh's deposition taken April 21, 2010.  In its entry, the trial court determined that Aftabizadeh's claim for unjust enrichment as to the $200,000 transfer must fail because it was an inter vivos irrevocable gift.  The trial court found that the evidence concerning the remaining $70,000 in transfers and the personal property did not support a judgment in either party's favor as to the unjust enrichment claim and allowed those matters to proceed to trial.  Finally, the trial court held that there was no viable fraud claim as to any of Aftabizadeh's claims, finding that Aftabizadeh and Marzvaan were genuinely in love, but that the love eventually soured.

{¶16}  Aftabizadeh raises several issues under his first assignment or error. His first issue is that the trial court disregarded his claims for unjust enrichment and fraud and focused exclusively on the law of gifts. In doing so, he claims that the court ignored the evidence developed during discovery, or at least did not construe the evidence most strongly in his favor.  He argues that the deposition

testimonies of Marzvaan and Aftabizadeh are subject to different interpretations and that any conflicting interpretations should have been construed in his favor.

{¶17} We have reviewed the well-reasoned opinion of the trial court and find no error in the court's application of the law. The trial court properly set forth the law concerning unjust enrichment and gifts. In order to prevail on an unjust enrichment theory, the plaintiff must establish three elements: (1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for her to retain that benefit without payment. *Cooper v. Smith*, 155 Ohio App. 3d 218, 228, 2003-Ohio-6083, ¶30, 800 N.E.2d 372, 379-380 (4th Dist.). No dispute exists as to whether or not the $200,000 transfer was made, known of, and retained. The sole question is whether it would be unjust for Marzvaan to retain it. To make that determination, the trial court correctly applied gift law because Aftabizadeh's original complaint alleged the $200,000 was a gift conditioned upon marriage. If Aftabizadeh gave Marzvaan the $200,000 on the express condition that it be returned to him if the Marzvaan did not marry him, then it would be unjust for her to keep the $200,000 when the relationship terminated prior to marriage. If however, Aftabizadeh could offer no evidence that he placed this express condition on the gift, then the gift would be an irrevocable inter vivos gift

and it would not be unjust for Marzvaan to keep it. *Cooper v. Smith*, 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372 (4th Dist.)(an engagement ring is a conditional gift, given in contemplation of marriage, but all other gifts are irrevocable inter vivos gifts unless they were expressly conditioned on the subsequent marriage).  The issue of unjust enrichment does not arise with absolute gifts because "enrichment of the donee is the intended purpose of the gift." *Id.*  at ¶ 28, quoting *Lane v. Saunders*, 4th Dist. Gallia App. No. 85CA5, 1985 WL 17472 (Dec. 13, 1985).  Marzvaan's motion for summary judgment argued that it would not be unjust for her to retain the $200,000 gift because it was given to her to help her buy out her husband's interest in the martial property.  She claims that Aftabizadeh had placed no express conditions on the gift at the time it was given to her.

{¶18}  We have independently reviewed the evidence, including the deposition testimonies of both parties that were before the court when it decided the summary judgment motion and find that the testimony concerning the $200,000 transfer is not subject to different interpretations.  Aftabizadeh's testimony concerning the $200,000 transfer was that he gave Marzvaan the money so that she could buy out her husband's interest in the marital home.  He never placed any express condition on the money when he gave it to her:

Q.      Okay. The January 10th, 2007 payment of $200,000, explain why you made that payment.

A.      Soheyla - - I exactly remember this discussion we had in the car. Or maybe we were talking a lot about she - - Sam left - - her husband left and they have to split whatever they had, and they decide only to – the only thing that they had in common was – that they agreed to split was the house.

And we talked a lot about that. And then finally in the car when I was returning from California she said she has to give Sam $200,000, something like that. And I said, okay, I'll help you with that.

Q.      Okay. And there wasn't any written contract relation to this amount?

A.      No, no, no. Me and Soheyla relation was much, much more than this.

Q.      And this one was not intended to compensate you for - - or to pay for any business expenses?

A.      I don't know. Even if Soheyla needed anything, I would probably give her everything I had.

Q.      This one was intended as a gift; wasn't it?

A.      No. I mean, me and Soheyla - - everything I - - the way I looked at my relation with Soheyla, that everything - - eventually everything between me and Soheyla - - everything that we have is going to be ours. So that's the way I looked at it.

Q.      So there was no expectation at the time you were discussing this with Soheyla that she would have to pay that back to you?

A.      I thought I'm going to be with Soheyla for the rest of my life, so there was no - - I had no reason to even to have a thought that my relation with Soheyla is going to break up.

Aftabizadeh's April 21, 2010 Deposition Trans. Pp. 42, ln.8 – 43, ln.22. Thus,

according to Aftabizdeh's testimony, which is not subject to different

interpretations, the $200,000 was given to Marzvaan without any express

conditions because he was confident that the two would never break up. Later

when he was asked again about the $200,000, Aftabizadeh testified that he gave it

to her to help her buy out her husband and that he believed he and Marzvaan were

involved in a mutually supportive relationship. He did not believe she was trying

to cheat or defraud him:

> A.      . . . . And that $200,000 that I gave her, she says she needs that
> money to pay her husband to get out of the house, to split the house.
> And I - - in fact, I asked her, Soheyla, how is - - isn't he going to ask
> you, where did you get that money to pay me? And she said, if he
> asks, I'm going to tell her - - tell him that I borrowed that from my
> sister. She needed that money to pay him.
>
> Q.      Uh-huh. But it wasn't  - - as we  talked about earlier, it wasn't
> discussed that she would repay that money to you?
>
> A.      Oh, everything I had, the way that I look at it - - looked at it,
> everything I had, it was hers. Everything she had could be mine. I
> mean, the sense that we were going to be together. I mean, we had
> exchanged e-mails. I mean, I don't think even Shakespeare could
> write such a romantic e-mails that we had to each other. You know?
> So it was very sincere relation we had.
>           I mean, I'm not saying she cheated me. Okay? Or I hope she
> didn't. All right? And she asked for support and I supported her. And
> I am sure - - I am very positive about that, knowing Soheyla, if I had
> asked her for help, she would have helped me if she could. Okay? I

mean, that's the relation we had.

Aftabizadeh April 21, 2010 Deposition Trans. Pp. 77, ln. 6 – 78, ln. 9.

{¶19} Marzvaan likewise testified that she and her husband faced a lot of financial stresses and were having trouble financially splitting their marital assets. The $200,000 was given to her by Aftabizadeh so that she could buy out her husband's interest in the marital home and Reza would then have a place to stay when he visited California:

> Q.     At some point in time you and your husband did file for dissolution of your marriage.
>
> A.     Yes.
>
> Q.     Since you're still in the same home, is it reasonable to assume that you bought him out of the house?
>
> A.     Well, that again was Reza's way of getting out of this. I had indicated to him that, you know, even if I wanted to do that, which was if at that time, that I have a lot of financial stress from my office and a lot of loans even to get this house, and we had - - I myself had bought a rental, and so had my husband as well with his brother.
> We were under a lot of pressures as far as finances to go our separate ways. So I talked to Reza and said that, you know, I'm not having a relationship, an intimate relationship with my husband and don't feel ready to financially separate from him. And so he said that, you know, if finances are just, you know, what you are waiting for, then I will give you the money to do so.
>
> Q.     Do you mean to get out of the marriage so that you can  - -
>
> A.     To buy him out, to live in the house, not even to necessarily divorce him, but buy him out so he would leave the house so that

Reza could come and stay.

Q.      And how much did Reza give you towards that?

A.      200,000 was what I - - we had the house appraised, and then his share of the investment would have been 200,000.

Q.      I'm sorry, what?

A.      His share of the investment into the house.

Q.      Right.

A.      We're talking about prime time, peak time - -

Q.      Oh, yes.

A.      - - in California at that time. So although the house was maybe two years old, if that, it had already gone up.

Q.      All right. So the 200,000 was to buy him out of the house.

A.      Correct.

Q.      And did you in fact use the 200,000 for that?

A.      Yes.

Marzvaan February 25, 2010 Deposition Trans. Pp. 25, ln. 6 – 26, ln. 23.

{¶20}  On appeal, Aftabizadeh argues that the above testimony is subject to different interpretations and that, if construed most favorably in Aftabizadeh's favor, it must be construed to find that Aftabizadeh gave the $200,000 expressly conditioned on the right to live in Marzvaan's house. He also cites testimony from

a second deposition, taken on September 1, 2011. However, that testimony was given after the trial court rendered its November 8, 2010 summary judgment decision and was not part of the evidence considered by the trial court. Nor was the Aftabizadeh September 1, 2011 deposition transcript accepted as a trial exhibit at the bench trial. See Trial Transcript. p. 129 (motion to admit Aftabizadeh's September 1, 2011 deposition transcript as plaintiff's trial exhibit denied).  Thus, that evidence was not before the trial court and we do not consider it now. However, even if we were to consider the September 1, 2011 testimony, there is nothing in that testimony that supports a finding that Aftabizadeh placed an express condition on the $200,000 at the time he transferred it to Marzvaan in January, 2007. Instead, he testified about his state of mind in the summer of 2007, almost six months after the $200,000 transfer. And even in this testimony, he does not state that he made an express condition on the $200,000 transfer at any time. He testified only as to his expectations.

{¶21}  We find that the evidence that the parties placed before the trial court in support of their summary judgment motions can be reasonably interpreted in only one way:  The $200,000 transfer was an irrevocable gift.  We cannot find any evidence that any verbal or written condition was placed on it at the time it was given.  Aftabizadeh and Marzvaan had a close, caring relationship. He wanted to

help her out and sincerely believed that Marzvaan would do the same for him, if needed. He also thought that if he gave Marzvaan $200,000 to buy out her husband, Aftabizadeh would have a place to stay when he visited California. The law does not require that we explore what ulterior motives are held in the Aftabizadeh's mind, but only to look at what he expressly stated as conditions at the time he gave the gift. *Cooper v. Smith,* 155 Ohio App.3d at 228 (holding that only what the donor expressly declares at the time the gift is given is relevant to determine intent; a donor's expectations of living in a house in the future are not relevant). We can find no genuine issues of material fact. Construing all of the evidence in favor of Aftabizadeh we can come to only one conclusion: the $200,000 was a gift. Based upon a review of all of the evidence, we find that the trial court did not err in granting Marzvaan summary judgment in her favor on the $200,000 transfer.

{¶22} Aftabizadeh's second issue under his first assignment of error is that the trial court erred when it found that he did not articulate a viable fraud claim and granted Marzvaan summary judgment on his fraud claim. To establish fraud, Aftabizadeh must show: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness

as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709, citing *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus; *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.   Again, to support his argument, he cites to Marzvaan's September 1, 2011 deposition testimony, which, like Aftabizadeh's September 1, 2011 deposition testimony, was not evidence considered by the trial court because it did not exist at the time the trial court granted summary judgment. There is no evidence provided in support of either of the party's motion for summary judgment that would support any findings of fraud. To the contrary, Aftabizadeh expressly testified that he did not believe Marzvaan intentions were to cheat him. Aftabhizadeh April 21, 2010 Deposition Trans. P. 78.

{¶23}  At the trial there was evidence that Marzvaan owned a condominium that was an investment property, and that her parents' home was titled in her name. There was no evidence as to the value of these properties or whether Marzvaan could liquidate them readily.  There was also some evidence that her parents had established a family trust with an inheritance from Marzvaan's grandfather.  There

was no evidence of the size of the res of the trust or whether or not Marzvaan had control over the assets of the trust or could otherwise direct these monies. Aftabizadeh argues that the existence of these other non-liquid assets is evidence of fraud. However, he has provided no evidence that he did not already know about them. He has provided no evidence that Marzvaan had a duty to disclose these assets to him, that he relied on a belief that these assets did not exist when he made the various transfers, that the existence of these assets was material to his decision to provide her with funds, or that she intentionally hid these assets from him to mislead him into giving her money. The evidence shows that Marzvaan had cash-flow problems due to her divorce and the recent opening of her dentistry practice. The existence of these non-liquid assets does not prove that Marzvaan was misrepresenting her short-term financial situation. We agree with the trial court and find that there was simply no evidence of fraud. Aftabizadeh has failed to provide any evidence on any of the material elements of a fraud claim. Aftabizadeh's first assignment of error is overruled. We affirm the trial court's grant of summary judgment in Marzvaan's favor as to the fraud claim.

<u>Appellants/Cross-Appellees Second Assignment of Error</u>

II.     THE TRIAL COURT ERRED IN NOT AWARDING JUDGMENT ON THE MERITS TO APPELLANTS AS TO THEIR CLAIMS FOR UNJUST ENRICHMENT AND BREACH OF CONTRACT.

<u>Standard of Review</u>

**{¶24}** Although we use a de novo standard of review for the trial court's summary judgment decision, we will not reverse a trial court's judgment in a civil trial unless it is against the manifest weight of the evidence. *Woody v. Woody*, 4th App. Dist. Athens. No. 09CA34, 2010-Ohio-6049. A trial court's judgment is not against the manifest weight of the evidence if some competent and credible evidence supports it. In determining whether a trial court's judgment is against the manifest weight of the evidence, a reviewing court must not re-weigh the evidence. Under this highly deferential standard of review, we do not decide whether we would have come to the same conclusion as the trial court. *Amsbary v. Brumfield*, 177 Ohio App.3d 121, 2008-Ohio-3183, 894 N.E.2d 71 (4th Dist.), at ¶11. Instead, we must uphold the judgment so long as the record contains "some evidence from which the trier of fact could have reached its ultimate factual conclusions." *Id.* Moreover, we presume the trial court's findings are correct because the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony. This means that the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it. Furthermore an appellate court should not substitute its judgment for that of the trial court when the record

contains competent, credible evidence going to all of the essential elements of the case. However, to the extent that the judgment involves a question of law, we review the question of law independently and without deference. *Woody*, at ¶17.

{¶25} Aftabizadeh argues in his second assignment of error that the trial court's finding that his breach of contract claim was unmeritorious was contrary to the manifest weight of the evidence. In its decision, the trial court found that the parties lacked a written or oral agreement for rent or business services, did not discuss repayment, or make any financial arrangements should they break up. The trial court did not find the parties' income tax returns to be competent, credible evidence of their actual relationship or intentions and did not give the tax returns any probative value:

> It appears that the Plaintiff was not concerned with having the money repaid to him until the parties broke up. $70,000 which the Plaintiff claimed as a business expense and the Defendant claimed as business income on the 2007 tax return appears to have been done for the tax benefits to the Plaintiff and does not reflect an actual business relationship between the parties.

Decision; Judgment Entry, September 14, 2012, p. 10. We have reviewed the transcript from the bench trial and find that sufficient competent and credible evidence exists to support the trial court's determination that Aftabizadeh's three payments constituting the $70,000 were not payments he made pursuant to a business lease or services contract, but were gifts to Marzvaan. Aftabizadeh

testified at trial that he sent $20,000 to Marzvaan in October 2006 to help her advertise her dental practice. He claimed that it was to be a loan. Trial Trans. Pp. 24-25. Later on cross-examination, he admitted that all that was discussed when he gave her the $20,000 was that he was helping her with advertising expenses. There was no discussion of repayment or of the use of her home or office for Khayyam Publishing's business needs at the time the $20,000 transfer occurred. Trial Trans. Pp. 43-44. As for the second $20,000 transfer made on April 29, 2007, Aftabizadeh testified that it was a check he wrote to her because she asked him for financial help because her husband had left. He wrote "rent" on the check. Trial Trans. Pp.27-28. On cross examination, he testified he did not know if he discussed Khayyam Publishing's rental needs and he admitted he never discussed renting space at her house with her in April, 2007 because he was assuming he was going to be married and living there forever:

> Q.     And uh, you never discussed any price terms with her about rental services? Would that be correct? You didn't say with her, I am going to rent you, your space at your house for $70,000 for one year?
> A.     Never.
> Q.     Uh, and you didn't discuss any duration terms like the rental services are going to be for one year or for two years?
> A.     Never.
> Q.     And that was because the two of you, you thought the two of you were going to be married and you'd be living there forever. Is that fair to say?
> A.     That's fair yes.
> Q.     And so essentially you kind of figured you'd be using that

space more or less indefinitely. Is that correct?
A.      That's probably true yes.
Q.      But you didn't discuss that kind of thing with Soheyla? You
didn't –
A.      I already said no.

Trial Trans. Pp. 50 – 51. Marzvaan testified that the reason "rent" was written on the April, 2007 check for $20,000 was because she was paying her "rent" or mortgage with it. Without her ex-husband contributing to the household expenses and with the additional expenses associated with starting up her dental practice, she testified that she was financially burdened and asked for the $20,000 to help her with her mortgage payment.  She testified that there was never any discussion that it was to be "rent" for Khayyam Publishing. Trial Trans. Pp. 88.

{¶26}  Finally, Aftabizadeh testified that he gave Marzvaan $30,000 in March, 2008 because she told him she needed money, "She took me to the airport in Los Angeles airport when I was leaving she said she needs money. And that's what I, I remember on her car I wrote a check for $30,000." Trial Trans. Pp. 30, 60. There was no evidence that he placed any conditions on this $30,000 transfer at the time he gave it to her or that he expected repayment.  In the evidence presented to the trial court for summary judgment purposes, Marzvaan explained that the $30,000 was used to settle an IRS dispute she was tangentially involved with caused by a financial or payroll contractor's mishandling of retirement and

insurance funds for a number of medical and dental practices. Marzvaan February 25, 2010 Deposition Trans. Pp. 35, 39-40.

{¶27} Aftabizadeh argued that his tax returns and those of Marzvaan showed that the parties had a business agreement. He deducted $70,000 of business expenses in 2007 and Marzvaan included $70,000 of business income in 2007. The trial court found that the evidence of the parties' tax returns lacked credibility and provided no probative value of the parties' intentions. We agree. Aftabizadeh testified that after he had transferred $240,000 to Marzvaan in 2007, he met with his tax advisor. The advisor told him that he could characterize some of the transfers to Marzvaan as business expenses because he had conducted some of his publishing business work in California. When he contacted Marzvaan to discuss this with her, she stated she would need to consult with her tax advisor about claiming business income. It was determined that she could claim up to $70,000 in business income without experiencing negative tax consequences. Aftabizadeh's tax advisor requested documentation to confirm the business expense so Marzvaan fabricated an invoice and faxed it to the tax advisor. In response to questioning from the trial judge, Aftabizadeh testified that if Marzvaan would have been able to claim $80,000 or $100,000 in business income, then he would have deducted the corresponding amount as business expenses for tax purposes. Aftabizadeh Trial

Trans. Pp. 34- 36; 51-56; 61-62;63-64; 71-73.  From this testimony, we find that the parties' re-characterized their financial transactions in a manner that may have minimized their tax obligations, but did not reflect the parties' true intentions or the manner in which they actually used the funds.  As a result, the trial court decided to disregard the tax returns and give weight instead to the evidence that showed what the funds were used for and what verbal statements were made at the time they were given.  As the fact finder, this was well within the court's discretion and supported by competent, credible evidence.

{¶28}  We find from the testimony presented at trial that there was competent, credible evidence supporting the trial court's finding that there was no business agreement between the parties for rent or other business services and that the $70,000 in transfers made by Aftabizadeh were not payments made for business services for Khayyam Publishing, but were unconditional gifts given to Marzvaan to help her with her business and living expenses. We overrule Aftabizadeh and Khayyam Publishing's second assignment of error. We affirm the trial court's decision finding that no contractual relationship for rental or business services existed between the parties.  However, as discussed below, we modify the award, which gave judgment in favor of Marzvaan on Aftabizadeh and Khayyam Publishing's claim against her for $40,000.  The entire $70,000 claim should have

been denied: the $20,000 from 2006, the $20,000 from 2007 and the $30,000 from

2008.

{¶29} We now turn to the assignments of error raised by Marzvaan in her

cross appeal.

<u>Appellee/Cross-Appellant First Assignment of Error</u>

II.     THE TRIAL COURT ERRED IN ITS DECISION; JUDGMENT ENTRY
AFTER THE BENCH TRIAL WHEN IT AWARDED THE PLAINTIFFS
$30,000 THAT PLAINTIFF DR. AFTABIZADEH PAID TO DEFENDANT DR.
MARZVAAN IN 2006 FOR DENTAL SERVICES.

{¶30} Marzvaan argues that the trial court made an erroneous finding of fact

and confused the $30,000 payment for dental services Aftabizadeh paid her in

2006 with the $30,000 gift he gave her in 2008.  She presents numerous excerpts

from deposition and trial testimony that shows that neither of the parties contested

that the $30,000 payment in 2006 was for dental services Marzvaan rendered to

Aftabizadeh. We find that all parties presented the same evidence with respect to

this $30,000 dental service payment.  We have reviewed the record and we can

find no evidence that the $30,000 payment Aftabizadeh made to Marzvaan in 2006

for dental services was disputed or included in this lawsuit.  The record shows that

there was only one other payment made by Aftabizadeh to Marzvaan in 2006: a

$20,000 payment in October, 2006 for advertising expenses.  The trial court

already disposed of this payment by implicitly finding it was a gift, when it found

that it was not the subject of a business contract. Thus, there was no evidence in the record of any other $30,000 payment made in 2006.

{¶31} Not only was the $30,000 payment for dental services never part of Aftabizadeh and Khayyam Publishing's lawsuit and undisputed by the parties, both parties fully discredited the 2006 tax return that mischaracterized the payment as a "loan." The evidence showed that Marzvaan's accountant mischaracterized the $30,000 Aftabizadeh made for dental services as a "loan" on her 2006 income tax returns. Marzvaan testified that this was how her accountant decided to treat Aftabizadeh's payment for dental services, but she had no explanation for why it was treated that way. Trial Trans. Pp. 118-122; Plaintiff Trial Exhibit 9. Aftabizadeh makes much of this evidence – not to try to collect this sum as a loan – but to impeach Marzvaan's credibility. On appeal, Aftabizadeh continues to explain that he paid $30,000 for dental services in 2006, but that Marzvaan falsely reported it as a loan, "Indeed, it appears Appellee apparently does not have an understanding as to what constitutes income for tax reporting puposes. *In 2006, she falsely reported $30,000 worth of dental work services to Appellant Reza as a loan from him.*" Appellant's Brief, filed February 19, 2013, pp. 9 (emphasis added). Thus, both parties stipulated that the $30,000 payment in 2006 was for dental services Marzvaan provided to Aftabizadeh and both parties stipulated that

Marzvaan's treatment of it as a loan on her 2006 tax return was improper.

{¶32} The trial court appears to have reviewed the deposition testimony of Marzvaan from September 1, 2011, which was not admitted into evidence at the trial, to reach the conclusion that Marzvaan believed the payment was a loan. But our review of this transcript shows that Marzvaan did not believe it was accurately characterized as a loan on her 2006 tax return. In her deposition testimony, she stated, "I believe he spend [sic] about $30,000 amount of money for dental work that he did in my office, and I think I charged him $30,000 even. So I'm assuming that's that income, but I'm not sure why it's said as loan rather than being placed as income." Marzvaan September 1, 2011 Deposition Trans. P. 55. We cannot find any evidence on the record that Marzvaan believed the $30,000 payment for dental services was accurately characterized as a "loan."

{¶33} The trial court found that Marzvaan's testimony that she provided dental work was not credible and there was no invoice presented into evidence. The lack of an invoice for the dental services is not surprising given that the parties did not contest this issue and no claim for the return of this $30,000 was part of the claims in the lawsuit. The trial court does not address the fact that Aftabizadeh has presented no claim in his lawsuit for a return of this $30,000 payment. Based on our review of the record, we find the evidence shows: (1) there was no claim

against Marzvaan for a return of the $30,000 in dental services in the complaint or amended complaint; (2) Aftabizadeh testified he received dental services from Marzvaan in 2006 and paid $30,000 for them; (3) Marzvaan testified she provided $30,000 in dental services to Aftabizadeh in 2006; (4) Aftabizadeh testified that the 2006 tax return showing the $30,000 in dental services as a loan was a false statement, made to avoid the payment of taxes; and (5) Marzvaan testified that the characterization of the $30,000 as a loan on her income tax was an unexplainable error by her accountant. Because there was no pending claim for a $30,000 loan in the lawsuit, both parties stipulated the payment was for dental services; and both parties fully denounced and discredited the 2006 income tax statement characterizing the payment as a loan, we find the trial court's decision finding this $30,000 to be a loan is against the manifest weight of the evidence.

{¶34} Moreover, as a matter of law, to find that Aftabizadeh was legally entitled to repayment of the $30,000 transfer made in 2006, there must be competent credible evidence going to all of the essential elements of either a claim of unjust enrichment or a loan. Any claim for unjust enrichment must fail because all of the evidence on the record shows that Marzvaan was not unjustly enriched; she provided dental services in return for the $30,000 payment. And, there was no evidence that the parties intended to make a loan. A contract is generally defined as

a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.  A meeting of the minds as to the essential terms of the contract is a requirement for enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. *Minster Farmers Coop. Exchange Co., Inc. v. Meyer,* 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 28, quoting *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. There is no evidence on the record that either party had a "meeting of the minds" that the $30,000 payment for dental services would actually be a loan that Marzvaan would be required to repay.

{¶35}  After a complete review of the record, we cannot find any competent, credible evidence to support a legal finding that Marzvaan must repay the $30,000 she received from Aftabizadeh for the dental work she provided in the summer of 2006.  The manifest weight of the evidence shows that this sum was paid for dental services and Aftabizadeh made no claim for the repayment of this money. All the parties discredited the 2006 tax return characterization of the income as a "loan." The record shows that the parties repeatedly characterized their financial

transactions as "business expenses" or "business income" or, in the case of the $30,000 payment for dental services, a "loan" for tax purposes that had no correlation to the parties' intentions or their actual uses of those funds. And, there is insufficient evidence to support a legal determination that Aftabizadeh and Khayyam Publishing are entitled to repayment under either the law of unjust enrichment or the law governing contractual loan agreements.

{¶36} The trial court's decision is confusing in the manner in which the damages are assessed. Although the trial court found that the full $70,000, which was comprised of the three payments of $20,000 in 2006, $20,000 in 2007, and $30,000 in 2008, was not made pursuant to any business contract and was a gift, the court does not award a judgment in Marzvaan's favor for the full $70,000 as it should have. Instead, it looks at the $30,000 payment in 2006 made for dental services, a payment separate and apart from the $70,000 at issue in the case, which was not claimed as damages in the lawsuit, and awards $30,000 of his $70,000 claim to Aftabizadeh and denies him the remaining $40,000. To clarify, the entire claim of $70,000 should have been denied when the trial court found those three payments to be gifts. The additional $30,000 payment made in 2006 was awarded to Aftabizadeh even though he did not have a claim for it in his lawsuit. We reverse that $30,000 award.

{¶37} Accordingly, we sustain the Appellee-Cross Appellant's first assignment of error and reverse the trial court's award of $30,000 to Aftabizadeh and Khayyam Publishing.

<u>Appellee/Cross-Appellant Second Assignment of Error</u>

II.     THE TRIAL COURT ERRED WHEN IT AWARDED THE PLAINTIFFS $22,800 FOR PERSONAL PROPERTY AFTER THE BENCH TRIAL.

{¶38} Marzvaan argues that the trial court's award of $22,800 was against the manifest weight of the evidence. Marzvaan claims that the evidence shows that Aftabizadeh abandoned his personal property at her house and that he never placed any condition that she return them. The trial court found that there was no evidence that any of the personal property was transferred to Marzvaan as a gift. We agree with the trial court's findings.   There was competent, credible evidence on the record that Aftabizadeh did not intend to make a gift of his personal property. The evidence on the record shows that Aftabizadeh purchased the bedroom suit primarily for his own use and that he brought his rugs, television, and computer for his own use and comfort while staying in California. Marzvaan testified that she already had a bedroom suite but that Aftabizadeh did not want to sleep on it because it was used as her marital bedroom suite with her ex-husband. Therefore, Aftabizadeh purchased a second bedroom suite that he would feel comfortable using while staying there. This is competent, credible evidence that

the bedroom suite was not intended as a gift to Marzvaan, but was a purchase made for Abftabizadeh's use. Trial Trans. Pp. 38- 40; 97-98.

{¶39} The evidence also showed that the rugs and the television were items Aftabizadeh brought for his own comfort. Marzvaan had no carpet on her floors. She testified that she had stone floor with no carpet and that she preferred that because she had cats. Trial Trans. P. 101. As a result, Aftabizadeh brought two Persian rugs he had acquired from his sister with him on one of his trips to California. Marzvaan testified that she did not like having a television in her bedroom, but that Aftabizadeh did, so he brought one to watch in her bedroom. Trial Trans. P. 100-101. The manifest weight of the evidence shows that all of the personal property was purchased or brought to the house for Aftabizadeh's use. Marzvaan had her own bedroom suite, she did not like to have rugs or carpets because of her cats, and she did not like to have a television in her bedroom. There is no evidence that Aftabizadeh intended to make a gift of any of these unneeded or undesirable things to her. Nor was there any evidence that he abandoned them. At trial, Aftabizadeh put on competent, credible evidence valuing these various items of personal property at $22,800.

{¶40} We find that there was competent, credible evidence to support the trial court's finding that the personal property Aftabizadeh brought to California

was intended for his personal use and comfort and was not a gift to Marzvaan and that the reasonable value of these items was $22,800. We overrule Marzvaan's second assignment of error and affirm the trial court's decision granting an award of $22,800 to Aftabizadeh and Khayyam Publishing.

{¶41} In sum, we overrule the Appellants/Cross-Appellees' first and second assignments of errors and affirm the trial court's summary judgment award to Marzvaan and the trial court's judgment following the bench trial finding no business contract between the parties existed. We sustain the Appellee/Cross-Appellant's first assignment of error and reverse the judgment award of $30,000 to Aftabizadeh and Khayyam Publishing. We overrule Appellee/Cross-Appellant's second assignment of error and affirm the court's award of $22,800 to Aftabizadeh.

{¶42} The clerk shall serve a copy of this order on all counsel of record and any unrepresented parties at their last known addresses by ordinary mail.

**JUDGMENT AFFIRMED IN PART,
REVERSED IN PART.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and that the Appellee/Cross-Appellant and Appellants/Cross-Appellees split the costs herein.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Abele, J.: Concur in Judgment and Opinion.


                                        For the Court,

                        BY:    _____
                                        Matthew W. McFarland
                                        Presiding Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**