[Cite as *Dayal v. Lakshmipathy*, 2020-Ohio-5441.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Anisha Dayal

       Appellant/Cross-Appellee

v.

Narendranath Lakshmipathy

       Appellee/Cross-Appellant

Court of Appeals No. WD-19-049

Trial Court No. 2016DR0166

**DECISION AND JUDGMENT**

Decided: November 25, 2020

* * * * *

Fritz Byers and Sheldon Slaybod, for appellant/cross-appellee.

Martin J. Holmes, Sr., for appellee/cross-appellant.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} Appellant/cross-appellee, Anisha Dayal, appeals the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, classifying the property held in the Naren Lakshmipathy Irrevocable Trust as marital property for purposes of division of property in this divorce action. Appellee/cross-appellant, Narendranath

Lakshmipathy, also appeals the trial court's judgment, which ordered him to reimburse appellant the sum of $397,500 for her share of his 2018 income taxes.

{¶ 2} The parties to this divorce action were married on May 25, 1992. At the time, appellee, a board certified anesthesiologist, had just finished his first year of internship in internal medicine. Subsequently, appellee entered into a fellowship program in pain management at Tufts Medical School in Boston, Massachusetts. Upon completion of the program in June 1997, the parties moved to Toledo so that appellee could accept a position at St. Charles Hospital.

{¶ 3} Over the next two to three years, appellee developed a pain management practice in Findlay, Ohio, known as Pain Management Group, LLC ("PMG"). In an effort to streamline the business operations of PMG, appellee partnered with a friend, John Bookmyer, in January 2009. Pursuant to an agreement reached between appellee and Bookmyer, appellee retained a 90 percent ownership interest in PMG and Bookmyer received a 10 percent ownership interest in PMG. Appellee's interest in PMG is held by appellee's holding company, Dravidian Capital Management, Inc., which holds ownership interests in several other business entities as well.

{¶ 4} PMG's operations expanded over time and, as of January 22, 2018, PMG was engaged in over 40 business arrangements, described by appellee as either joint ventures or management service agreements with local hospitals. According to the affidavit of property filed with the trial court, the value of PMG at the time of the evidentiary hearing was $21,536,000. In addition to his interest in PMG and numerous

2.

other items of value listed on the affidavit, appellee held a checking and an investment account (collectively, the "NASM account[1]") with First Federal Bank that was funded primarily through distributions from Dravidian, which had a balance of approximately $11,400,000 at the time of the hearing. During the pendency of these proceedings, in April and June 2018, appellee withdrew a total of $795,000 from the NASM account with the trial court's permission, in order to pay his estimated income taxes.

{¶ 5} Given his extensive assets, appellee created the Naren Lakshmipathy Irrevocable Trust (the "Trust") in December 2012. According to his hearing testimony, appellee created the Trust in an effort to "protect assets for the family. That was the intent." At an earlier deposition, appellee stated that the Trust was created "so [his] children and Anisha could have moneys available, which are to secure their future." Explaining the difference in these two answers, appellee stated the following on redirect examination at the evidentiary hearing:

My understanding of the question, I'm saying the purpose of setting up the account, the purpose I had the trust was to protect assets. In using words such as their financial future, it would also include me in their financial future. I would not set something up where it excludes myself in their financial security. So the intent was for me to be included in their financial

---

[1] NASM is an acronym built upon the first names of the parties and their two children.

3.

security. I would not intentionally [set] something up where it excluded me from a fund I created for them and not be inclusive in that process.

{¶ 6} The trust agreement creating the Trust was drafted by appellee's attorney, Jon Liebenthal, and admitted into evidence as defendant's exhibit F. The agreement was executed on December 22, 2012, by appellee, as grantor, appellant, as trustee, and Liebenthal, as special trustee. At the time of execution, appellee and appellant were living together as husband and wife. Consequently, Liebenthal indicated that he had no reason to plan for the contingency that the couple would eventually be divorced.

{¶ 7} During his hearing testimony, Liebenthal explained the purpose behind forming the Trust. Liebenthal stated that the federal estate tax exemption amount was $5 million in 2012, and was scheduled to "sunset and get reduced to $1 million. So we did this for several clients at the end of 2012. We wanted to take advantage of the bigger estate tax exemption." Liebenthal recommended the creation of an irrevocable trust in 2012 "as a means of helping to preserve [appellee's] net worth."

{¶ 8} Liebenthal expounded that the primary difference between a revocable and irrevocable trust is that a revocable trust is subject to modification, amendment, and termination by the grantor, whereas an irrevocable trust is not. Thus, the grantor of an irrevocable trust, according to Liebenthal's understanding, "does not have the use or benefit of [the trust's] assets and has no way to control that function." Liebenthal went on to agree with appellant's counsel's statement that a grantor of an irrevocable trust, in

4.

order for the trust to retain its irrevocable status, "must forever relinquish all right, title, and interest in the corpus of the trust."

{¶ 9} Because of the irrevocable nature of the Trust, the property held by the Trust would no longer belong to appellee, and would thus be excluded from appellee's estate. Consequently, this property would not be subject to estate taxation in the event of appellee's untimely death.

{¶ 10} To accomplish the goal of creating an irrevocable trust, Liebenthal drafted a trust agreement containing the following language, in relevant part:

XI. GENERAL TRUST PROVISIONS

* * *

O. Separate Property

Property of any character, including income, held for or paid to a non-Grantor beneficiary under this Trust Agreement shall be owned by such beneficiary (beneficially, when held for such beneficiary), as separate property and not as community property, it being the Grantor's intent that such property is in the nature of a gift or inheritance from the Grantor.

* * *

XIII. TRUSTS IRREVOCABLE

This Trust Agreement and each trust estate created in this Trust Agreement are expressly declared to be irrevocable, and the Grantor expressly waives all rights and power, acting alone or with others, to alter,

5.

amend or change the terms or conditions of this Trust Agreement in whole or in part.

By this trust agreement, the Grantor hereby renounces any interest, either vested or contingent, in the income or principal of any trust estate created hereunder, and relinquishes all possession or enjoyment of, or the right to income from, the property of any trust estate, and all right and power, whether alone or in conjunction with others, to designate the persons who shall possess and enjoy the principal or income of any such trust estate.

{¶ 11} According to Liebenthal, the Trust was funded by appellee in December 2012 with deposits totaling $4,554,698. These deposits are reflected in a 2012 gift tax return filed by appellee on April 10, 2013. Prior to a 2016 amendment to the Trust Agreement, the income taxes generated by the Trust were paid by appellee through the use of an escrow account created specifically to pay such taxes and the administration expenses associated with the Trust. However, Liebenthal acknowledged that appellee's decision to pay the income taxes generated by the Trust did not nullify his relinquishment of any interest in the corpus of the Trust.

{¶ 12} When asked about the irrevocable nature of the trust, appellee acknowledged that the trust had to be irrevocable in order to receive the financial benefits that motivated him to create the Trust. Appellee admitted that the funds he used to fund the Trust did not constitute a loan for which he would be repaid.

6.

{¶ 13} For her part, appellant testified that she did not know the details surrounding the formation of the Trust at the time of her execution of the trust agreement. During her deposition, appellant stated that she did not have any discussions with appellee regarding the Trust prior to its formation. Appellant first became aware of the extent of the assets held by the Trust during the pendency of these proceedings.

{¶ 14} Following 24 years of marriage, appellant filed her complaint for divorce on September 9, 2016. After appellee filed his answer and counterclaim on November 4, 2016, the matter proceeded to discovery. Thereafter, a five-day evidentiary hearing before a magistrate was held on January 22-24, March 29, and August 13, 2018.

{¶ 15} On April 6, 2018, appellee filed a motion to withdraw funds, in which he sought an order from the trial court allowing him to withdraw $394,000 from the NASM account, which would be used to pay his first quarter estimated income taxes for 2018. On April 13, 2018, the magistrate issued her order granting appellee's motion and permitting him to withdraw the requested funds.

{¶ 16} Approximately three months later, on June 7, 2018, appellee filed a second motion to withdraw funds, this time seeking an order that would permit him to withdraw $401,000 in order to pay his second quarter estimated income taxes for 2018. Once again, the magistrate granted appellee's motion. In her June 22, 2018 order granting the motion, the magistrate noted that "this interim distribution authorized by this Order will be taken into consideration at the time the Court determines the final distribution of marital assets."

7.

**{¶ 17}** Following the hearing, the parties resolved nearly every disputed issue, as set forth in an agreed-upon order issued by the magistrate on February 12, 2019. Relevant to the present appeal, the order provides in part:

[T]he parties agree and acknowledge that they will submit to the Court for its decision two issues, to be decided on the basis of evidence in the record as of the date of this Order, without additional testimony or documentary evidence, and the parties' arguments. Those two issues are:

1. The Court shall determine whether the assets held in the Trust, including the property known as 608 Sixth Street, Brooklyn, NY and the funds held by and in the name of the Trust are marital assets subject to equitable division, as Defendant contends, or are separate property not subject to division between the parties, as the Plaintiff contends. For purpose of this determination, the parties stipulate that the value of the assets in the trust is six million seven hundred and ninety thousand two hundred and fifty-one dollars ($6,790,251.00).

\* \* \*

2. The Court shall determine whether Plaintiff is entitled to be paid an amount equal to 50% of the moneys Defendant withdrew from the NASM account in April and June, 2018, pursuant to Court Orders, to pay his estimated income taxes. The parties stipulate that the total amount

8.

Defendant withdrew from the NASM account pursuant to those orders is $795,000.

{¶ 18} In accordance with the magistrate's February 12, 2019 order, the parties each filed briefs outlining their arguments regarding the two remaining issues on February 25, 2019. Thereafter, on March 7, 2019, the magistrate issued her decision resolving the two outstanding issues. In her decision, the magistrate ruled in favor of appellee as to the Trust issue and held that the Trust is marital property subject to equitable division. The magistrate found in favor of appellant as to the NASM account issue, ordering appellee to reimburse appellant in the amount of $397,500, an amount equal to half of the $795,000 withdrawal appellee made in order to pay his 2018 estimated income taxes.[2]

{¶ 19} On March 19, 2019, appellant filed objections to the magistrate's decision, in which she took issue with the magistrate's conclusion that the Trust is marital property subject to equitable division. For his part, appellee also filed objections to the magistrate's decision on March 27, 2019, arguing that the magistrate wrongly determined that appellant was entitled to reimbursement for the $795,000 withdrawal from the NASM account and contending that the trial court correctly classified the Trust as marital property.

---

[2] A clerical mistake was made on the magistrate's March 7, 2019 order, which indicated an award of $375,000 instead of $397,500. The mistake was corrected by the magistrate upon the issuance of an amended decision on March 12, 2019, which reflects an award of $397,500 to appellant.

9.

{¶ 20} Upon consideration of the parties' objections to the magistrate's decision, the trial court issued its order on May 6, 2019. In its decision, the trial court overruled the parties' objections, approved and adopted the magistrate's decision, classified the Trust as marital property, and ordered appellee to reimburse appellant the sum of $397,500.

{¶ 21} Subsequently, on June 20, 2019, the trial court entered its final judgment entry of divorce incorporating its rulings with respect to the two unresolved issues. The entry was signed by both the trial court and the magistrate. In response to the entry, the parties each filed notices of appeal. Upon our initial review of the entry, we determined that it did not constitute a final appealable order, prompting us to remand the matter to the trial court for a final appealable order.

{¶ 22} In compliance with our remand instructions, the trial court issued a final appealable judgment entry of divorce on October 17, 2019. Thereafter, the parties amended their notices of appeal, rendering the matter decisional.

## B. Assignments of Error

{¶ 23} On appeal, appellant assigns the following error for our review:

> The trial court committed legal error, and abused any discretion it may have had, by ruling that the Irrevocable [Trust] is marital property, subject to equitable division.

10.

**{¶ 24}** In his cross-appeal, appellee assigns the following error for our review:

As the parties agreed to file a joint 2018 income tax return and split any overpayment or refund, the trial court abused its discretion in ordering Ned to "refund" Anisha half of the amount withdrawn from the NASM account to pay the 2018 income tax estimates.

## II.  Analysis

### A.  Classification of the Trust Assets as Marital or Separate

**{¶ 25}** In appellant's sole assignment of error, she argues that the trial court abused its discretion in classifying the Trust as marital property rather than separate property.

**{¶ 26}** In divorce proceedings, the domestic relations court must first determine what constitutes marital property and what constitutes separate property.  R.C. 3105.171(B).  This determination involves mixed questions of law and fact, and is therefore not a discretionary matter.  *Schober v. Schober*, 6th Dist. Ottawa No. OT-08-061, 2009-Ohio-4408, ¶ 26, citing *Murphy v. Murphy*, 4th Dist. Lawrence No. 07CA35, 2008-Ohio-6699, ¶ 17.  Instead, we review the domestic relations court's characterization of property under the manifest weight of the evidence standard.  *Id.*  "We will not reverse a judgment as against the manifest weight of the evidence if it is supported by some competent, credible evidence."  *Sullinger v. Sullinger*, 6th Dist. Lucas No. L-18-1079, 2019-Ohio-1489, ¶ 41, citing *Blake Homes, Ltd. v. FirstEnergy Corp.*, 173 Ohio App.3d 230, 2007-Ohio-4606, 877 N.E.2d 1041, ¶ 62 (6th Dist.).

11.

{¶ 27} Under R.C. 3105.171, the terms "marital property" and "separate property" are defined, in pertinent part, as follows:

(A) As used in this section:

* * *

(3)(a) "Marital property" means, subject to division (A)(3)(b) of this section, all of the following:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

* * *

(b) "Marital property" does not include any separate property.

* * *

(6)(a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:

* * *

(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;

* * *

(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.

{¶ 28} Property acquired during a marriage is generally presumed to be marital property, unless it can be shown to be separate. *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 18. The burden of proof regarding the classification of certain property as "separate property" lies with the party seeking such classification. *Tincher v. Tincher*, 5th Dist. Fairfield No. 2019 CA 00028, 2020-Ohio-3352, ¶ 64, citing *Passyalia v. Moneir*, 5th Dist. Stark No. 2016 CA 00182, 2017-Ohio-7033, ¶ 18.

{¶ 29} Here, the Trust was initially funded with assets that were acquired during the course of the marriage and thus constituted marital property. However, appellant argues that the Trust assets became her separate property when appellee created the Trust naming her as the beneficiary and completely divested himself of the Trust assets.

13.

{¶ 30} In order to prove that the property contained in the Trust is her separate property under R.C. 3105.171, appellant must demonstrate that it was gifted to her by appellee as contemplated under R.C. 3105.171(A)(6)(a)(vii). "Title to property does not determine whether it is marital or separate. Further, either party may acquire separate property through a gift after the date of the marriage. That reasonably includes an inter vivos gift from one spouse to the other." (Citations omitted.) *Williams-Booker v. Booker*, 2d Dist. Montgomery Nos. 21752 and 21767, 2007-Ohio-4717, ¶ 23; *see also Comella v. Comella*, 8th Dist. Cuyahoga No. 90969, 2008-Ohio-6673, ¶ 46, citing *Slife v. Slife*, 10th Dist. Franklin Nos. 85AP-701 and 85AP-920, 1987 WL 32231 (Dec. 31, 1987) (stating property that would otherwise be classified as marital property "is no longer marital property when given as a gift from one spouse to another.").

{¶ 31} The essential elements of an inter vivos gift are: "(1) [the] intent of the donor to make an immediate gift, (2) delivery of the property to the donee, [and] (3) acceptance of the gift by the donee." *Barkley v. Barkley*, 119 Ohio App.3d 155, 694 N.E.2d 989 (4th Dist.1997), fn. 2, citing *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 4 N.E.2d 917 (1936). Generally, the donee has the burden of showing, by clear and convincing evidence, that the donor made an inter vivos gift. *Kovacs v. Kovacs*, 6th Dist. Sandusky No. S-09-039, 2011-Ohio-154, ¶ 12, citing *Helton v. Helton*, 114 Ohio App.3d 683, 686, 683 N.E.2d 1157 (2d Dist.1996).

{¶ 32} In this case, there is no question that appellee delivered the property to appellant (as beneficiary) when he deposited $4,554,698 into the Trust in 2012.

14.

Additionally, appellant's acceptance of the assets is evidenced by her execution of the Trust Agreement naming her beneficiary of the Trust. Thus, the question we must address is whether appellee's transfer of funds into the Trust was performed with the requisite donative intent to constitute an inter vivos gift.

{¶ 33} Upon review of the evidence presented in this case regarding the creation and funding of the Trust, we find that appellee possessed the requisite donative intent to make an inter vivos gift to appellant as beneficiary of the Trust. Indeed, the language of the Trust Agreement makes it clear that such donative intent existed at the time the marital property was transferred into the Trust. In particular, the Trust Agreement states that the property held by the Trust for the benefit of the Trust beneficiaries "shall be owned by such beneficiary (beneficially, when held for such beneficiary), *as separate property and not as community property, it being the Grantor's intent that such property is in the nature of a gift or inheritance from the Grantor.*" (Emphasis added.) Moreover, in the Trust Agreement, appellee "renounce[d] any interest, either vested or contingent, in the income or principal of any trust estate created hereunder, and relinquishe[d] all possession or enjoyment of, or the right to income from, the property of any trust estate * * *."

{¶ 34} When asked about the irrevocable nature of the Trust created by the Trust Agreement, appellee acknowledged that the Trust had to be irrevocable in order to receive the financial benefits that motivated him to create the Trust, namely the avoidance of estate taxes on the funds transferred into the Trust for the benefit of appellee

15.

and the parties' children. Moreover, appellee filed a 2012 estate tax return shortly after funding the Trust, which reflects appellee's position at the time that the deposits constituted gifts entitling him to certain tax benefits with respect to the value of the assets transferred into the Trust ($4,554,698).

{¶ 35} Taken together, the language of the Trust Agreement, appellee's testimony at trial, and appellee's filing of the 2012 gift tax return establish that appellee possessed the requisite donative intent to make an inter vivos gift to appellant. At the time he created the Trust in 2012, appellee relinquished all interest in the assets used to fund the Trust so that the assets would not be depleted by the federal estate tax applicable at the time, and in order that appellant (and his children thereafter) would be provided for in the event of his death.

{¶ 36} Now, eight years later, appellee advances an argument that is inconsistent with his actions in 2012 and in contravention to his characterization of the transfer of funds into the Trust that he took in filing his 2012 gift tax return. In essence, appellee seeks to reclassify his transfer of funds into the Trust because the couple's relationship has now deteriorated. However, the developments that have transpired over the intervening years since the Trust was created do not vitiate the donative intent that appellee possessed at the time of the transfer of funds in 2012.

{¶ 37} "'Many gifts are made for reasons that sour with the passage of time.' Unfortunately, gift law does not allow a donor to recover/revoke an inter vivos gift simply because his or her reasons for giving it have 'soured.'" *Cooper v. Smith*,

155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, ¶ 25 (4th Dist.), quoting

*Albanese v. Indelicato*, 25 N.J.Misc. 144, 145, 51 A.2d 110 (2d Dist.1947). This reality

remains true even in cases such as this involving inter-spousal transfers of marital

property. *See Comella, supra,* at ¶ 62-63. In *Comella*, the court indicated:

> The best approach is to treat gifts exchanged during marriage as absolute
>
> and irrevocable inter vivos gifts unless the donor-spouse has expressed an
>
> intent stated directly to the donee-spouse at the actual time of gifting that
>
> the gift is conditioned on the continuation of the marriage. In the instant
>
> case, Thomas did not impose conditions on the gifts at the time of their
>
> making by directly stating to Patricia that if stated conditions failed, the
>
> gifts would fail. Absent such a situation, traditional gift law prevails, and
>
> the completed inter vivos gifts made by Thomas were absolute and
>
> irrevocable.

*Id*. at ¶ 63.

{¶ 38} Likewise, in this case, there is no evidence in the record to suggest that

appellee attached conditions to the establishment of the Trust. Indeed, the evidence

establishes just the opposite, as any such conditions would have thwarted appellee's

stated purpose for establishing the Trust, namely the avoidance of federal estate tax by

virtue of his complete divestment of the assets transferred into the Trust, for the benefit of

appellant and, upon her death, his children.

17.

{¶ 39} In our decision in *Soley v. Soley*, 2017-Ohio-2817, 82 N.E.3d 43 (6th Dist.), we addressed a related argument. There, the husband deeded some of his real estate to his wife during the course of the couple's marriage in order to evade his creditors. *Id.* at ¶ 2. Subsequent to the transfer, the couple began to experience marital difficulties leading to the filing for divorce. In the divorce action, husband argued that the transferred real property remained his separate property (the real estate was held by husband prior to the marriage) because it was transferred only to avoid creditors and not as an inter vivos gift.

{¶ 40} Upon consideration of husband's argument, the domestic relations court agreed that the transfer of the property did not constitute a gift and therefore did not convert the separate property into marital property. *Id.* at ¶ 4. The court determined that husband did not possess the requisite donative intent when he executed the quitclaim deed for the purpose of avoiding his creditors. *Id.*

{¶ 41} On appeal, we acknowledged that "the mere execution of a deed transferring title from one spouse to another does not convert property that is otherwise separate property into marital property." *Id.* at ¶ 22. We noted that "'the form of title is relevant to, but not conclusive of, the classification of property as being either marital or separate.'" *Id.*, quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 161, 694 N.E.2d 989 (4th Dist.1997). Nonetheless, we held that husband acted with donative intent when he transferred the property in order to avoid creditors. *Id.* at ¶ 26.

18.

**{¶ 42}** In arriving at our decision, we approvingly cited to the reasoning articulated by the Tenth District in *Neighbarger v. Neighbarger*, 10th Dist. Franklin No. 05AP-651, 2006-Ohio-796. In that case, the husband transferred farmland via quitclaim deed to his wife to shield it from potential civil judgments against him. The husband argued that the property remained his separate property in the subsequent divorce action. The Tenth District rejected the husband's argument, stating:

> There is no question that [husband] intended, in 1990 [the year in which husband transferred the property to wife], to create a legal barrier between himself and the property. His stated objective was to shelter his assets from any financial risk arising from the criminal charges against him. If the outcome of the criminal trial had been different, he most certainly would have argued that he had no assets to satisfy whatever financial liability might have arisen, including his child support obligations. Having made that choice for his own benefit in 1990, to the detriment of his children and creditors, we will not allow [husband] to turn his deliberate action into a legal fiction for his own benefit again. He intended to transfer the property and, as evidenced by the quitclaim deed, he did transfer the property.

*Id.* at ¶ 25.

**{¶ 43}** After noting the foregoing analysis from the Tenth District's *Neighbarger* decision, we went on to examine the Third District's decision in *Strasburg v. Strasburg*, 3d Dist. Auglaize No. 2-10-12, 2010-Ohio-3672. Relying upon the Tenth District's

reasoning in *Neighbarger*, the court in *Strasburg* held that the relinquishment of all legal rights to farmland by transfer of property via quitclaim deed to a spouse for the purpose of avoiding creditors constitutes a gift for purposes of classifying the property as separate or marital property. *Id.* at ¶ 22. In *Strasburg*, the husband testified that he inherited farmland from his father's estate during the marriage, and that he conveyed the property to his wife via quitclaim deed because he was concerned about the risk that he would be sued. *Id.* Like the court in *Neighbarger*, the Third District found that the husband

> transferred his inherited farmland via quitclaim deed immediately upon his inheritance, and that, had [husband] been sued, he doubtlessly would have argued that the farmland was [wife's] sole property, and was not an asset subject to any ensuing financial liability. * * * Regardless of [husband's] testimony that he did not intend to relinquish ownership or waive his rights to the property, the fact remains that [husband] deeded the farmland to [wife] solely via quitclaim deed, and did not retain any reserved rights or joint rights to the property. Thus, [husband's] testimony about his motives for the transfer was wholly inconsistent with his actions in making the transfer. As [husband's] testimony established that he relinquished all legal rights to the farmland upon its transfer to [wife], we cannot find that the trial court erred in concluding that the farmland was not [husband's] separate property.

*Id.*

{¶ 44} The foregoing cases address the effect of an inter-spousal transfer of property, albeit by deed rather than irrevocable trust, where the husband sought to completely divest himself of any interest in the transferred property to create a legal barrier between himself and the property. Similarly, in this case, appellee sought to shield several million dollars from potential federal estate tax liability by creating the Trust naming appellant as the beneficiary, funding it, and filing a federal gift tax return evidencing the transfer. Applying the reasoning we articulated in *Soley*, we find that appellee's actions establish the requisite donative intent to make an inter vivos gift.

{¶ 45} In light of the foregoing, we conclude that the evidence presented below establishes that appellee's transfer of the assets contained in the Trust constituted an inter vivos gift to appellant under R.C. 3105.171(A)(6)(a)(vii). Since appellee gifted his interest in the assets to appellant, the assets are appellant's separate property. Therefore, we find that the trial court's classification of the property as marital property was against the manifest weight of the evidence.

{¶ 46} Accordingly, we find appellant's assignment of error well-taken. Having found that the Trust assets are appellant's separate property pursuant to an inter vivos gift, we must remand this matter to the trial court for the court to equitably distribute the property under R.C. 3105.171.

### B. NASM Account

{¶ 47} In appellee's assignment of error, he argues that the trial court abused its discretion in finding that appellant was entitled to be reimbursed for half of appellee's

$795,000 withdrawal from the NASM account, which he used to pay his 2018 income taxes.

{¶ 48} "As to determinations regarding property awards in divorce proceedings, a trial court "'may divide property as it deems equitable, * * * [with] broad discretion in arriving at an equitable property division.'" *Baum v. Perry-Baum*, 6th Dist. Wood No. WD-18-085, 2019-Ohio-3923, ¶ 16, quoting *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982), quoting *Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). Unless the trial court's decision amounts to an abuse of discretion, this court cannot substitute its judgment for that of the trial court. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 94, 518 N.E.2d 1197 (1988). An abuse of discretion connotes that the trial court's attitude in reaching its decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 49} Here, the parties stipulated below that the NASM account was marital property subject to equitable division. The trial court permitted appellee to make several withdrawals from the NASM account in order to pay his estimated federal income taxes for 2018, but indicated that it would address such withdrawals in its subsequent distribution of the marital estate. In the distribution, the trial court directed appellee to reimburse appellant after finding that appellee's use of marital funds held in the NASM account benefited only appellee.

22.

{¶ 50} In his brief, appellee argues that this finding was unreasonable because the parties filed a joint income tax return in 2018. Appellee contends that the parties agreed to share equally in any income tax refunds or overpayments on their 2018 income taxes, and therefore both parties benefited from appellee's withdrawal of the funds and use of such funds to make estimated income tax payments.

{¶ 51} In response, appellant contends that the trial court considered the fact that the parties paid their 2018 income taxes jointly in its decision. Appellant notes that the trial court considered and rejected appellee's contention that his payment of income taxes benefited appellant.

{¶ 52} In its decision, the trial court addressed appellee's joint tax argument, finding that "[s]uch a sharing of tax burdens for 2018 might be equitable if the parties equally shared in the 2018 income, but Wife received, at most, 8% ($30,000 of $375,000) of Husband's monthly income for the first six months of the years."

{¶ 53} We have reviewed the record in its entirety. Based upon that review, we find that the trial court's determination that appellant only received 8 percent of the couple's income is supported by the record. As noted above, the trial court has broad discretion in fashioning its award. We do not find that the court abused its discretion when it determined that it would be equitable to make appellee responsible to pay the income tax obligations of the couple, where appellee received 92 percent of the couple's income during the pendency of this action.

{¶ 54} Accordingly, we find appellee's sole assignment of error not well-taken.

23.

### III. Conclusion

{¶ 55} Having concluded that the trial court's classification of the property contained in the Trust was against the manifest weight of the evidence, the judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is reversed, and this matter is remanded to the trial court so that it may make an equitable division of the property under R.C. 3105.171(B).  The trial court's judgment is affirmed in all other respects.  Costs are to be assessed to appellee pursuant to App.R. 24.

Judgment reversed, in part,
and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.